**Donald E. HOWARD, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 79A05–0105–CR–221.**

Court of Appeals of Indiana.

Jan. 14, 2002.

Timothy P. Broden, Broden & Miller, Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General, of Indiana, Joseph A. Samreta, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Donald E. Howard appeals his convictions for Dealing in Cocaine,[1] a class A felony, and Dealing in Marijuana,[2] a class A misdemeanor. More specifically, Howard contends that the trial court erroneously: 1) admitted evidence of uncharged misconduct in violation of Ind.Evidence Rule 404(b), and 2) refused his proposed jury instruction defining a controlled buy.

---

1. IND.CODE § 35–48–4–1.

2. IND.CODE § 35–48–4–10.

## FACTS

The facts most favorable to the verdict indicate that on April 11, 1995, a confidential informant (CI1) called Howard and arranged to meet him the same day and purchase drugs. Tr. at 50–51. Law enforcement personnel of an area drug task force searched CI1, equipped him with a body wire, and gave him $200 to buy an "eight ball"[3] of cocaine. Tr. at 51, 230. CI1 arrived at Howard's house whereupon Howard sold him the "eight ball." Tr. at 56. A second confidential informant (CI2) approached Howard on June 30, 1995, and asked if she could purchase drugs from him. Howard said that he did not have any drugs at that time, but he gave her a marijuana joint. Tr. at 75.

On August 18, 1995, CI2 was searched, given money, and equipped with a body wire. CI2 approached Howard once more and asked if he had any drugs. Howard answered that he did not have any at the time but thought he would receive some that evening. CI2 gave Howard $180 but never received cocaine from him. Howard later returned the $180 to CI2. Tr. at 79. During 1994–95 Howard frequently bought cocaine from suppliers whose names were Richard Waggoner and Matt Hudson, and then Howard would sell the cocaine to others. Tr. at 20–23, 80–83. Bruce Perrin testified that he had purchased cocaine from Howard during 1994–95, once a week for several weeks. Tr. at 20. Perrin testified that he would not always pay Howard when he received the drugs but would sometimes take them on "credit" for a later payment. Tr. at 20–21. Perrin also testified that the last time he remembered purchasing cocaine from Howard was 1996 or "late 1995." Tr. at 27. After Howard was arrested in January 1996, Perrin paid him for the cocaine he had earlier purchased. Tr. at 28.

On January 24, 1996, Indiana State Police Trooper Robert D. Bass was assisting other Indiana State Police drug enforcement officers. Trooper Bass, who was on road patrol in the vicinity of Howard's house, watched for Howard's vehicle. Having been alerted by other officers that Howard's vehicle had left his residence, Trooper Bass spotted Howard's vehicle and noticed that its right taillight was completely out. Tr. at 221. Trooper Bass pulled Howard's vehicle over and asked for Howard's license and vehicle registration.

He then asked Howard to come to his patrol car where he issued Howard a written warning and asked Howard if he would talk to another officer—Indiana State Police Sergeant Bill Peevler—who had just arrived on the scene. The purpose of conducting the traffic stop on Howard was to convince him to help the drug enforcement investigators in making controlled drug buys from his suppliers, Waggoner and Hudson. Tr. at 239–40. Trooper Bass read Howard his *Miranda* rights and informed him that he was not under arrest. Tr. at 222. Howard spoke with Sergeant Peevler and consented to a search of his vehicle. Tr. at 223.

At first, Howard agreed to cooperate with the law enforcement officers in the controlled drug buys. Howard told Trooper Bass that there was money underneath his car seat. Tr. at 241. The officers found the money, mostly in denominations of $20 bills, amounting to $5000. Tr. at 241. While at the scene, Howard decided not to cooperate with the investigators, so shortly thereafter a warrant was issued for his arrest. Tr. at 166. "Don," a canine trained in narcotics detection, later identified the $5000 as having a narcotics odor through a "money scan." Tr. at 177, 181–82. George W. Franz, a special agent of

---

**3.** An "eight ball" is slang for 3.5 grams. Tr. at 243.

the Bi–State Drug Task Force, testified that in his experience the $20 denominations, with the narcotics odor, indicated that Howard was selling cocaine in many separate smaller transactions. Tr. at 163.

Howard was arrested and charged with dealing in cocaine, conspiracy to commit dealing in cocaine, dealing in marijuana, and being a habitual substance offender. Once out on bond, he left Indiana and was captured in Florida three years later and transported back to Indiana for trial. During trial, the court admitted evidence of the money scan over Howard's objection on Rule 404(b) grounds. Howard claimed the evidence was uncharged misconduct because the evidence was seized in January 1996 while the charging information only charged him with conspiracy to commit dealing for his acts committed in 1994–95.

The trial court instructed the jury on the elements of the crimes but refused Howard's instruction defining a controlled drug buy. Howard was found guilty of all charges and was also found to be a habitual drug offender. At the sentencing hearing, the trial court concluded that sentencing Howard for dealing in cocaine and conspiracy to commit dealing in cocaine would violate double jeopardy prohibitions. Therefore, the trial court entered convictions and sentences only on the dealing in cocaine and dealing in marijuana charges. The trial court subsequently enhanced the sentences because of Howard's habitual offender status. Howard now appeals.

### DISCUSSION AND DECISION

#### I. Alleged Rule 404(b) Evidence

■ Howard first contends that admission of the money scan violated Rule 404(b) of the Indiana Rules of Evidence. Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

*Id.* The "paradigm of such inadmissible evidence is a crime committed on another day in another place, evidence whose only apparent purpose is to prove the defendant is a person who commits crimes." *Swanson v. State*, 666 N.E.2d 397, 398 (Ind. 1996).

■ When a defendant objects to the admission of evidence on the grounds that it violates Rule 404(b), we generally: 1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act, and 2) balance the probative value of the evidence against its prejudicial effect pursuant to Ind.Evidence Rule 403. *Monegan v. State*, 721 N.E.2d 243, 248 (Ind.1999). We review the trial court's admission of Rule 404(b) evidence under an abuse of discretion standard. *Hicks v. State*, 690 N.E.2d 215, 223 (Ind.1997). If the evidence is offered only to produce the "forbidden inference," that is, that the defendant had engaged in other, uncharged misconduct and that the charged conduct was in conformity with the uncharged misconduct, then the evidence is inadmissible. *Crain v. State*, 736 N.E.2d 1223, 1235 (Ind.2000).

■ However, Rule 404(b) does not control in this case. The evidence of the $5000 was relevant to *charged* conduct—not evidence of a crime committed on another day in another place, whose only apparent purpose was to prove Howard is a person who commits crimes. *See Swanson,* 666 N.E.2d at 398 (rejecting Swanson's Rule 404(b) argument). The conspiracy information charged Howard in part:

> On or about 1994 through 1995, in Tippecanoe County, State of Indiana; Donald E. Howard, with the intent to commit Dealing in Cocaine in an amount of Three (3) Grams or More, did agree with his source(s) to deliver cocaine, in an amount of three grams or more, to other persons, and one or more of the following overt acts were performed in furtherance of said agreement, to wit: Howard obtained cocaine, including amounts greater then three (3) grams, on multiple occasions from his source(s); Howard delivered cocaine, including amounts greater than three grams, on multiple occasions to other persons....

Appellant's App. at 2. The $5000 with narcotics odor found on January 24, 1996, was relevant evidence of the conspiracy to deal in 1994–95. The information charged Howard with obtaining and delivering cocaine to others in 1994–95, not with receiving payment for the cocaine in 1994–95. *See* Appellant's App. at 2. Perrin testified that, during 1994–95, he would sometimes purchase cocaine on credit and pay Howard at a later date. Tr. at 20–21. The last time Perrin purchased cocaine from Howard was in 1996 or "late 1995." Tr. at 27. Perrin, at some point after Howard's arrest in 1996, paid Howard the money he owed him for his latest cocaine purchase. Tr. at 28. Moreover, Special Agent Franz testified that the $20 denominations with narcotics odor indicated a number of smaller sales had previously taken place. Tr. at 163.

■ The bills amounting to $5000, containing the presence of narcotics, is relevant to the conspiracy charge because it makes Howard's delivery of cocaine to others in 1994–95 more probable. *See* Ind.Evidence 401 (defining relevant evidence). The $5000 with narcotics odor, found twenty-four days after the year 1995 had concluded, tended to show that the conspiracy to obtain and deliver cocaine had taken place during 1995. Moreover, because of the narcotics odor on the bills, the evidence had the requisite probative value for admission into evidence without the danger of *"unfair* prejudice." *See* Evid.R. 403 (emphasis supplied).

Because the State successfully proved the relevancy, probative value, and lack of unfair prejudice of the $5000—showing that the $5000 was evidence of *charged* conduct in 1994–95—there was no abuse of discretion in admitting the evidence. However, to preclude argument on the matter, the better course would have been to amend the dates on the charging information. *See, e.g., Brown v. State,* 728 N.E.2d 876, 880 (Ind.2000) (holding that State's amendment of the charging information at the close of State's case in chief was permissible because amending the date of the charged crimes did not affect Brown's defense).

Howard attempts to analogize his case to *Hardin v. State,* but his reliance on that Rule 404(b) opinion is unfounded. *See* Appellant's reply brief at 1–2. *Hardin v. State* involved prosecution for a cocaine dealing offense where the charging information alleged that "on or about April 4, 1990," Hardin had knowingly delivered cocaine. 611 N.E.2d 123, 126 (Ind.1993). The trial court admitted evidence that one month *after* April 4, 1990, Hardin had unsuccessfully attempted to arrange another cocaine sale. *Id.* The trial court also

admitted testimony from one of Hardin's buyers that she had purchased cocaine from Hardin on a number of occasions before April 4, 1990. *Id.* at 127. Our supreme court viewed these transactions as *uncharged* acts used to show that Hardin acted in conformity therewith on April 4, 1990. *Id.* at 130. Concluding that the evidence of uncharged acts did not fall within any exception to Rule 404(b), our supreme court held that the trial court had erred in admitting the evidence. *Id.* In the instant case, the $5000 was evidence of Howard's *charged* conduct of a two-year conspiracy to deal in cocaine, thus making *Hardin* inapposite.

## II. Refusal of Tendered Jury Instruction

Howard's second and final contention is that the trial court erred in rejecting his tendered jury instruction. Howard's "Proposed Instruction No. 3" defined "a controlled buy":

> A controlled buy consists of searching a person who is to act as the buyer, removing all personal effects, giving him the money with which to make the purchase, and sending him into the building or structure in question. Upon his return he is again searched for contraband. Except for what actually transpires within the building or structure, the entire transaction takes place under the direct supervision of the police. They ascertain that the buyer goes directly into the building and returns directly, and they closely watch all entrances to the building or structure throughout the transaction.

Appellant's App. at 7. Howard wished to instruct the jury that one of the confidential informants was not thoroughly searched before participating in the controlled buy. In reviewing a trial court's decision to give or refuse a tendered jury instruction, this court considers whether the instruction correctly states the law, is supported by the evidence in the record, and is covered in substance by other instructions. *Whitney v. State*, 750 N.E.2d 342, 344 (Ind.2001). The trial court has discretion in instructing the jury, and we will reverse only when the instructions amount to an abuse of discretion. *Id.*

We see no reason why the trial court should have given this instruction to the jury. Howard crafted his instruction from a portion of this court's opinion in *Flaherty v. State*, 443 N.E.2d 340, 341 (Ind.Ct.App. 1982). *Flaherty* did not involve instructing the jury; rather, the case addressed the sufficiency of a probable cause affidavit. *Id.* Not only is *Flaherty* factually inapposite, the trial court in the instant case correctly explained that Howard could argue to the jury whether the confidential informants were adequately searched for contraband before participating in the controlled buy. Tr. at 259–60. Such argument would have gone to the weight of the evidence and the credibility of the State's witnesses. Howard has failed to show either at the trial court level or on appeal why his proffered instruction was necessary. There was no abuse of discretion in refusing it.

Affirmed.

NAJAM, J., and MATTINGLY–MAY, J., concur.