## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 31 2015, 9:01 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeremy Thompson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 31, 2015

Court of Appeals Case No. 22A04-1411-CR-534

Appeal from the Floyd Circuit Court

The Honorable J. Terrence Cody, Judge

Cause No. 22C01-1311-FA-2175

**Baker, Judge.**

[1]     Jeremy Thompson appeals his conviction for Dealing in a Schedule I Controlled Substance,[1] a class A felony.  He argues that the trial court erred when it rejected his tendered jury instructions on 1) the proper procedures of a controlled buy, and 2) his defense to the felony enhancement.  Finding no error, we affirm.

# Facts

[2]     On August 27, 2013, a confidential informant (CI)—acting on the instructions of New Albany Police Officers Ronald Gaines and Jason Hatfield—texted Thompson to set up a meeting.  Through a series of veiled text messages that signaled a narcotics transaction, the CI and Thompson negotiated a price of fifty dollars and agreed to meet.  Thompson, who often spent time at the home of Kristen Moran, texted the CI that he was at "Kristin's," at the Cross Creek Apartments on Green Valley Road in Floyd County.  Ex. 1.

[3]     Before the CI went to meet Thompson, Officer Gaines and Officer Hatfield searched her, as well as her vehicle, to ensure that she was not already in possession of narcotics.  The CI was traveling to the meeting with her mother, whom the officers also searched. The CI was then equipped with an audio/video recording device, and she and her mother drove to the Cross Creek Apartments.

---

[1] Ind. Code § 35-48-4-2.

[4] When they arrived at the apartments, the CI went inside to meet Thompson in the apartment they had designated through their text messages. She went inside the apartment, where she paid Thompson fifty dollars in exchange for a baggie. The video/audio device captured the exchange, and showed Thompson handing a baggie to the CI and telling her, "it's fire," although it did not show the CI handing Thompson the money. Tr p. 311. The video showed that approximately one minute and seven seconds passed between the time that the CI entered the apartment and when she returned with the baggie.

[5] After she left the apartment, the CI gave the baggie she had obtained from Thompson to the officers. A forensic analysis of the baggie's contents revealed that it contained heroin, Nicotinamide, and Papaverine; the latter two substances are not controlled. The contents of the baggie weighed .33 grams.

[6] On November 13, 2013, the State charged Thompson with dealing in a schedule I controlled substance, a class A felony, and with being an habitual offender. A jury trial was held on August 25-28, 2013. In discussing final instructions, Thompson requested that the trial court give an instruction to the jury defining a controlled buy. The trial court rejected the instruction, stating that it found that "there is fertile ground for both parties to argue whether or not there were adequate controls to the buy, and the jury can [] draw their own conclusions from the evidence and from the arguments of counsel." Tr. p. 733. Thompson also requested that the jury be given an instruction regarding a defense against the enhancement of his crime to a class A felony. The trial

court also rejected this instruction because it found that there was no evidence presented to support the defense.

[7] On August 28, 2013, the jury found Thompson guilty as charged. Thompson waived his right to a jury trial on the sentencing enhancement, and, on September 24, 2013, the trial court found that Thompson was an habitual offender. On October 17, 2014, the trial court sentenced Thompson to twenty years for dealing in a schedule I substance and enhanced this sentence by three years for the habitual offender finding, resulting in an aggregate sentence of twenty-three years. Thompson now appeals.

## Discussion and Decision

[8] Thompson argues that the trial court erred when it rejected his proffered jury instructions. Instructing the jury lies within the discretion of the trial court and we will reverse only when the instructions amount to an abuse of discretion. *Murray v. State*, 798 N.E.2d 895, 900 (Ind. Ct. App. 2003). The trial court abuses its discretion if it gives instructions that, taken as a whole, misstate the law or otherwise mislead the jury. *Id.*

[9] "The purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Id.* at 899. In reviewing a trial court's decision to give a tendered jury instruction, we consider (1) whether the instruction correctly states the law, (2) whether it is supported by the

evidence in the record, and (3) whether it is not covered in substance by other instructions. *Id.* at 899–900.

# I. Controlled Buy Instruction

[10] Thompson first argues that the trial court erred when it failed to give the following proffered instruction regarding the adequacy of controls in a controlled buy:

> A controlled buy consists of:
> 1. Searching the person who is to act as the buyer,
> 2. Removing all personal effects,
> 3. Giving him/her money with which to make the purchase,
> 4. Then sending him/her into the residence in question.
>
> Upon his her return he/she is again searched for contraband.
>
> Except for what actually transpires within the residence, the entire transaction takes place under the direct observation of the police. They ascertain that the buyer goes directly to the residence and returns directly, and they closely watch all entrances to the residence throughout the transaction.
>
> Whether a controlled buy was conducted properly goes to the credibility and weight of the evidence.
>
> *Mills v. State*, 379 N.E.2d 1023 (Ind. 1978).

Appellant's App. p. 97. Thompson argues that the trial court's failure to thus instruct the jury "deprived him [of] an instruction for his only defense to the charged offense." Appellant's Br. p. 5.

[11] In *Howard v. State*, 761 N.E.2d 449, 454 (Ind. Ct. App. 2002), this Court examined a similar instruction proffered by a defendant, which read:

A controlled buy consists of searching a person who is to act as the buyer, removing all personal effects, giving him the money with which to make the purchase, and sending him into the building or structure in question. Upon his return he is again searched for contraband. Except for what actually transpires within the building or structure, the entire transaction takes place under the direct supervision of the police. They ascertain that the buyer goes directly into the building and returns directly, and they closely watch all entrances to the building or structure throughout the transaction.

In *Howard*, we determined that the trial court's decision to reject this instruction was not an abuse of discretion. *Id.* The language used in the instruction was taken from *Flaherty v. State*, 443 N.E.2d 340, 341 (Ind. Ct. App. 1982), which was a case addressing the sufficiency of a probable cause affidavit. In finding that the trial court did not err in rejecting the instruction, we explained: "[n]ot only is *Flaherty* factually inapposite, the trial court in the instant case correctly explained that Howard could argue to the jury whether the confidential informants were adequately searched for contraband before participating in the controlled buy." *Howard*, 761 N.E.2d at 454.

[12] In the instant case, Thompson also proffered a jury instruction that was crafted from a case considering the sufficiency of a probably cause affidavit. *See Mills*, 177 N.E.2d at 1026. Here, as with the instruction in *Howard*, the case Thompson has used to craft his instruction is factually inapposite. Moreover— just as the trial court in *Howard* noted that Howard had the opportunity to argue before the jury—the trial court here noted that "there is fertile ground for both parties to argue whether or not there were adequate controls to the buy, and the jury can [] draw their own conclusions from the evidence and from the arguments of counsel." Tr. p. 733. We find that Thompson has not shown that

his proffered instruction was necessary and the trial court did not err in refusing to include it.

# II. Defense Instruction

[13] Thompson also argues that the trial court erred when it rejected his instruction regarding his defense to the enhancement of his crime to a class A felony. At the time Thompson committed his offense, dealing in a schedule II substance was generally a class B felony. Ind. Code § 35-48-4-2.[2] However, the offense became a class A felony if "the person delivered or financed the delivery of the substance . . . in, on, or within one thousand (1,000) feet of . . . a family housing complex." *Id.* Also at the time of his offense, it was a statutory defense to the charge that a defendant had committed his offense within 1,000 feet of a family housing complex that 1) "a person was briefly in, on, or within one thousand (1,000) feet" of a family housing complex, *and* 2) "no person under eighteen (18) years of age at least three (3) years junior to the person was in, on, or within one thousand (1,000) feet of the . . . family housing complex . . . at the time of the offense." Ind. Code § 35-48-4-16(b).[3]

[14] Thompson wished to include the following instruction regarding the above defense to the jury:

---

[2] The statute has been amended, with an effective date of July 1, 2014. We use the statute that was in effect at the time Thompson committed his offense.

[3] The statute has been amended, with an effective date of July 1, 2014. We use the statute that was in effect at the time Thompson committed his offense.

It is a defense to the charge brought by the State of Indiana that on or about August 27, 2013, Jeremy T. Thompson knowingly delivered heroin . . . within one thousand (1,000) feet of a family housing complex, to wit: Cross Greek Apartments if:

(1) Jeremy T. Thompson's time within one thousand (1,000) feet of a family housing complex was brief, and

(2) No person under eighteen (18) years of age was in, on, or within one thousand (1,000) feet of a family housing complex.

I.C. 35-48-4-16(b)(1) and (2)

The term "briefly" means a period of time no longer than reasonably necessary for Jeremy T. Thompson's intrusion into the proscribed zone principally for conduct unrelated to unlawful drug activies [sic], provided that Jeremy T. Thompson's activities related to the charged offense were not visible.

So, for example, the State must rebut this defense by proving beyond a reasonable doubt that Jeremy T. Thompson's presence in the family housing complex was principally to engage in criminal drug activity during the time he was there and the time was not brief, and that such activity was visible to children.

Once the defendant raises this defense, the Prosecutor must rebut this defense by proving beyond a reasonable doubt that the Defendant Jeremy T. Thompson was within 1,000 feet of a family housing complex more than "briefly" or that persons under the age of eighteen were within 1,000 feet of the family housing complex.

Appellant's App. p. 95.

[15] Thompson was entitled to an instruction regarding this defense only if he presented evidence to support both prongs of this defense—that his stay was brief and that children were absent. *See Jackson v. State*, 890 N.E.2d 11 (Ind. Ct. App. 2008) (finding that the defendant was not entitled to an instruction on the Indiana Code section 35-48-4-16(b) "briefly" defense when the defendant had failed to present any evidence as to whether there were any children present). Here, Thompson did not present any evidence regarding whether children were

present. Thompson argues that there is no footage of children in the video recorded by the CI during the meeting, but we agree with the State's assertion that that is entirely inconclusive. Furthermore, Thomas presented no evidence that he was in the apartment complex only briefly. The recorded video may show that the drug transaction took little more than a minute, but there is a reasonable inference that Thompson was at the apartments both before and after the transaction took place. Indeed, before the meeting, he texted the CI that he was "at Kristin's," and Kristen Moran lived at the apartment complex. Ex. 1. Therefore, we find that there was no evidence to support this defense, and the trial court did not err in refusing the tendered instruction.

[16] The judgment of the trial court is affirmed.

Bailey, J., and Mathias, J., concur.