Thomas ARMSTRONG, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0005–CR–304.

Court of Appeals of Indiana.

Jan. 18, 2001.

Victoria Ursulskis, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Eileen Euzen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Thomas Armstrong was convicted following a jury trial of Reckless Homicide, a Class C felony; three counts of Pointing a Firearm, as Class D felonies; and Carrying a Handgun without a License, a Class A misdemeanor. He appeals, presenting the following issues for our review:

1. Whether he could be charged with and convicted of multiple counts of pointing a firearm arising out of a single incident in which he pointed a handgun at three distinct individuals.

2. Whether his convictions for pointing a firearm, as Class D felonies, and carrying a handgun without a license, a Class A misdemeanor, constitute multiple punishments for the

same offense in violation of the Indiana Double Jeopardy Clause.

3. Whether the trial court relied on improper aggravators to enhance Armstrong's sentence.

We affirm in part, reverse in part and remand for resentencing.

### FACTS AND PROCEDURAL HISTORY

In the spring of 1999, Katina Currie ended her relationship with Armstrong and told him to move out of the house. On May 2, 1999, Armstrong went to Currie's house with his sister, Gina Armstrong, and Currie's brother, Detreck Wilson, and forced his way inside the home. Armstrong saw Currie's new boyfriend, Melvin Franklin, sitting in the living room. Armstrong pulled out a handgun from the waistband of his pants, cocked it, pointed it at Franklin, and told Franklin to leave. Currie, Wilson, and Gina ran toward Armstrong and attempted to take the gun away from him. When Currie told Armstrong not to shoot because there were children in the house, Armstrong pointed the gun at her and told her to "get back." Record at 305. He then shot a bullet into the living room wall. Franklin ran into the kitchen and Armstrong chased after him. When Wilson and Gina tried to stop Armstrong from shooting again, Armstrong pointed the gun at each of them and told them to stand back. He then shot Franklin in the back of the head as Franklin tried to flee. Franklin died of the gunshot wound to his head.

The State charged Armstrong with murder, three counts of D felony pointing a firearm,[1] and one count of A misdemeanor carrying a handgun without a license. A jury found him guilty of the lesser included offense of reckless homicide, a Class C felony, and of all the remaining handgun charges. The trial court entered judg-

---

1. The three separate counts represent charges of pointing a firearm at Currie, Wilson, and Gina.

ment of conviction and sentenced Armstrong to eight years on the reckless homicide count, three years on each count of pointing a firearm, and ·365 days on the carrying a handgun without a license count. The court ordered that the five sentences be served consecutively, for a total executed sentence of eighteen years.

## DISCUSSION AND DECISION

### Issue One: Multiple Counts of Pointing a Firearm

Armstrong first argues that he cannot be held liable for the three counts of pointing a firearm at Currie, Wilson, and Gina, because the charges stem from a single incident. He analogizes the present circumstances to the case of *Armstead v. State*, 549 N.E.2d 400, 402 (Ind.Ct.App. 1990), where this court concluded that a "single affray" between a suspect and more than one police officer could not lead to multiple charges and convictions for resisting law enforcement. In so holding, we observed that resisting law enforcement was not a crime against the person but instead, was an "interference[ ] with governmental operations constituting [an] offense[ ] against public administration." *Id.* at 401. Specifically:

> A person who violates [the resisting law enforcement statute] harms the peace and dignity of the State of Indiana and its law enforcement authority. The harm caused by one incident is the same regardless of the number of police officers resisted. *It is the act of resisting duly constituted authority which the statute prohibits, not resisting individual representatives of that authority.* ... Accordingly, unless more than one incident occurs, there may be only one charge.

*Id.* (emphasis added). We do not find Armstrong's analogy between resisting law enforcement and pointing a firearm to be persuasive.

A firearm is a lethal weapon, and "the potential for harm exists any time a firearm is pointed *at a person.*" *State v. Meier*, 422 N.W.2d 381, 385 (N.D.1988) (emphasis added). We can envision no situation in which pointing a loaded gun at another person does not create a substantial risk of death or bodily injury to that person. *Bracksieck v. State*, 691 N.E.2d 1273, 1275 (Ind.Ct.App.1998) (holding that pointing a firearm, as Class D felony, and criminal recklessness, as Class D felony, are same offense for double jeopardy purposes). It is also "common knowledge that numerous persons are killed each year by guns which the handlers thereof did not realize were loaded, or thought were unloaded, which were in fact loaded." *Meier*, 422 N.W.2d at 385.

Indiana Code Section 35–47–4–3 proscribes in no uncertain terms the knowing or intentional pointing of a firearm "*at another person* [,]" regardless of whether that firearm is loaded. IND.CODE § 35–47–4–3(b) (emphasis added). It is the act of pointing a firearm at an individual person which the statute prohibits, and, in view of its clear and unambiguous language, we believe the statute was intended to protect individuals from being placed in danger of death or bodily injury from the discharge of a firearm. *Cf. Armstead*, 549 N.E.2d at 401. Unlike the harm caused by a "single affray" of resisting law enforcement, the harm caused by a single incident of pointing a firearm is not the same regardless of the number of persons at whom the defendant points his weapon. Indeed, had the legislature intended to preclude multiple charges and convictions under Indiana Code Section 35–47–4–3, as Armstrong suggests, that section would read: "A person who knowingly or intentionally points a firearm at another person *or persons* commits a Class D felony."

■ Here, while all three of Armstrong's convictions for pointing a firearm stem from a single incident, the evidence shows that he pointed a handgun at three individuals: Currie, Wilson, and Gina. The record further supports an inference that these were three separate and distinct

pointings of a firearm rather than one continuous action.[2] We therefore decline to reverse Armstrong's convictions.

■ We must nevertheless remand for resentencing. Indiana Code Section 35–50–1–2(c) limits the total sentence that may be imposed for acts arising out of a single "episode of criminal conduct"[3] to the presumptive sentence for the next highest felony. The presumptive sentence for a Class C felony, which is the next highest felony in this case, is four years. *See* IND.CODE § 35–50–2–6(a). Thus, Armstrong's sentence for his three convictions of pointing a firearm should not have exceeded four years. Because the trial court sentenced Armstrong to three years on each count of pointing a firearm, to be served consecutively for an aggregate term of nine years, we reverse that part of his total executed sentence and remand to the trial court with instructions to resentence Armstrong accordingly.

### Issue Two: Double Jeopardy

■ Armstrong further contends that his convictions for pointing a firearm, as Class D felonies, and for carrying a handgun without a license, a Class A misdemeanor, constitute multiple punishments for the same offense as proscribed by the Indiana Double Jeopardy Clause. Two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Ho v. State,* 725 N.E.2d 988, 990–91 (Ind.Ct.App.2000), *trans. denied.* Arm-

strong maintains that his convictions violate double jeopardy under both the statutory elements test and the actual evidence test.

■ Under the statutory elements test, "[e]ach offense must contain at least one element which is separate and distinct from the other offense so that the same evidence is not necessary to convict for both offenses." *Richardson v. State,* 717 N.E.2d 32, 52 (Ind.1999). Indiana Code Section 35–47–4–3 provides that "[a] person who knowingly or intentionally points a firearm at another person commits a Class D felony. However, the offense is a Class A misdemeanor if the firearm is not loaded." The State charged Armstrong with knowingly pointing a handgun at Currie, Wilson, and Gina. Thus, the essential elements comprising the charged offenses of pointing a firearm are: (1) Armstrong (2) pointed (3) a handgun (4) at Currie, Wilson, and Gina.

■ The second offense, carrying a handgun without a license, a Class A misdemeanor, is defined in Indiana Code Section 35–47–2–1. That statute provides that "a person shall not carry a handgun in any vehicle or on or about his person, except in his dwelling, on his property or fixed place of business, without a license issued under this chapter being in his possession." IND. CODE § 35–47–2–1. Once the State has established that a defendant carried a handgun on or about his person, away from his residence or place of business, the burden shifts to the defendant to demonstrate that he possessed a valid license. *Harris v. State,* 716 N.E.2d 406, 411 (Ind. 1999). Thus, proof of the presence of a license to carry a handgun is an exemption or exception to, and not an element of the

---

**2.** We do not decide today the issue of whether a defendant may be charged with and convicted of multiple counts of pointing a firearm arising out of a single incident during which the defendant engages in one continuous action of pointing a firearm, such as when a defendant waves a gun indiscriminately toward a crowd of people. Those are not the facts of this case.

**3.** An "episode of criminal conduct" exists where the conduct is such that a complete account of one charge cannot be related without referring to the details of the other charge. *See Lockhart v. State,* 671 N.E.2d 893, 904 (Ind.Ct.App.1996).

crime of carrying a handgun without a license. *Elliott v. State*, 435 N.E.2d 302, 304 (Ind.Ct.App.1982). Here, the State alleged in its charging information that Armstrong "did, in a place not his dwelling, property, or fixed place of business, carry a handgun on or about his person or in a vehicle without a license therefor[.]" Record at 29. Thus, the essential elements comprising the charged offense of carrying a handgun without a license are: (1) Armstrong (2) possessed (3) a handgun (4) in a place that was not his dwelling, property, or fixed place of business.

■ In comparing the two challenged offenses, the essential elements of pointing a firearm and the essential elements of carrying a handgun without a ·license are not the same, as each requires proof of facts which the other does not. The offense of carrying a handgun without a license requires mere possession of the handgun, while the offense of pointing a firearm requires the additional act of pointing the handgun at another person. Moreover, a conviction for carrying a handgun without a ·license requires evidence that the possession occurred in a location other than the defendant's dwelling, property, or fixed place of business. We therefore conclude that the challenged offenses in this case are not the same under Indiana's statutory elements test.

■ Our state double jeopardy analysis, however, does not end here. Even though the crimes of pointing a firearm and carrying a handgun without a license are not the same offense under the statutory elements test, we must apply the following actual evidence test:

> [T]he actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one

offense may also have been used to establish the essential elements of a second challenged offense.

*Richardson,* 717 N.E.2d at 53.

To prove the crime of pointing a firearm, as a Class D felony, the State presented evidence that Armstrong pointed a handgun at Currie, Wilson, and Gina. To prove the crime of possession of a handgun without a license, the State presented evidence that Armstrong possessed the handgun in a place that was not his dwelling, property, or fixed place of business, namely, Currie's house. In addition, Armstrong failed to present evidence that he had a license to carry the handgun that was found in his possession.,

Accordingly, distinct evidentiary facts were used to prove that Armstrong pointed a handgun at Currie, Wilson, and Gina, "while a lack of evidentiary facts was used to prove that [Armstrong] did not have a license to carry that handgun." *See Ho,* 725 N.E.2d at 993 (finding no double jeopardy violation under actual evidence test where defendant was convicted of robbery while armed with a handgun and carrying a handgun without a license). Further, the jury was required to find evidence that Armstrong was not in his home or business when it determined him guilty of carrying a handgun without a license. Armstrong has failed to demonstrate a reasonable possibility that the same evidentiary facts may have been used to establish the essential elements of each challenged offense. Therefore, we find no double jeopardy violation under Indiana's actual evidence test and conclude that Armstrong's convictions for pointing a firearm, as Class D felonies, and for carrying a handgun without a license, a Class A misdemeanor, do not constitute multiple punishments for the same offense in violation of the Indiana Double Jeopardy Clause.

### Issue Three: Sentence

■ Finally, sentencing determinations rest within the trial court's discretion

and are governed by Indiana Code Section 35–38–1–7.1.[4] *Bluck v. State*, 716 N.E.2d 507, 511 (Ind.Ct.App.1999). When enhancing a presumptive sentence, the trial court must identify all "significant" aggravating and mitigating factors, state why each is considered aggravating or mitigating, and articulate the balancing process by which the court determined that the aggravating factors outweighed the mitigating factors. *Id.* The same aggravating circumstances may be used to enhance a presumptive sentence and to impose consecutive sentences. *Id.*

At the sentencing hearing, the trial court here remarked as follows:

The Court considers as aggravating the fact that you have a history of violent criminal offenses. You have a conviction out of Madison County for aggravated batter[y] in 1992, wherein you shot someone with a handgun. You have a conviction for criminal mischief out of Madison County on August the 19th of [1992].... [T]he Court's going to consider your arrest for criminal recklessness on January 13th of [1998], which involved your shooting someone—firing a handgun at someone in the shoulder,

which was dismissed. The Court will consider as aggravating the fact that you have a[n] arrest on July 16th of [1999] and a case pending here in Marion County, Criminal Court Seventeen for allegedly holding a gun to the head of a female and threatening to shoot her and pushing her in the chest.... You're charged with criminal recklessness[,] pointing a firearm and battery. The Court will consider as aggravating the fact that you are in need of correctional rehabilitative treatment that can [be] best provided by your commitment to a penal facility and that prior attempts at rehabilitation through probation and ... prison ... have all failed to rehabilitate you. The Court will consider as aggravating the circumstances surrounding the offense and the nature of this offense. Your behavior that day was reprehensible. You terrorized everyone in that home.... [T]here was a household full of—not only of adults but children. You have a history of extreme violence. The Court considers you to be a very dangerous person. The Court ... will consider as mitigating the remorse that you've stated today. But it's a little bit

4. That statute reads in part:
  (a) In determining what sentence to impose for a crime, the court shall consider:
    (1) the risk that the person will commit another crime;
    (2) the nature and circumstances of the crime committed;
    (3) the person's
      (A) prior criminal record;
      (B) character; and
      (C) condition;
        * * *
  (b) The court may consider the following factors as aggravating circumstances or as favoring imposing consecutive terms of imprisonment:
    (1) The person has recently violated the conditions of any probation, parole, or pardon granted to the person.
    (2) The person has a history of criminal or delinquent activity.
    (3) The person is in need of correctional or rehabilitative treatment that can best be provided by commitment of the person to a penal facility.
    (4) Imposition of a reduced sentence or suspension of the sentence and imposi-

tion of probation would depreciate the seriousness of the crime.
        * * *
  (c) The court may consider the following factors as mitigating circumstances or as favoring suspending the sentence and imposing probation:
        * * *
    (6) The person has no history of delinquency or criminal activity, or the person has led a law-abiding life for a substantial period before commission of the crime.
    (7) The person is likely to respond affirmatively to probation or short term imprisonment.
    (8) The character and attitudes of the person indicate that the person is unlikely to commit another crime.
        * * *
  (d) The criteria listed in subsections (b) and (c) do not limit the matters that the court may consider in determining the sentence.
IND.CODE § 35–38–1–7.1.

too late. The Court finds that the aggravating circumstances outweigh the mitigators.

Record at 828–29. The court consequently enhanced Armstrong's sentence, imposing the maximum terms allowable by statute.[5] Armstrong now argues that the trial court relied on "legally impermissible" aggravating factors to enhance his sentence. Brief of Appellant at 13. We address the validity of each of the aggravating factors he challenges in turn.

**1. Criminal History and Arrest Record**

■ The trial court properly found that Armstrong's criminal history, and specifically, his prior conviction for aggravated battery, as a Class B felony, and criminal mischief, as a Class A misdemeanor, was an aggravating factor. *See* IND. CODE § 35–38–1–7.1(b)(2). Nevertheless, Armstrong urges that the trial court improperly considered Armstrong's record of arrests and pending charges as part of his criminal history. Armstrong is correct in stating that a record of arrests, without more, may not be considered as an aggravator under Indiana Code Section 35–38–1–7.1(b)(2). *See Tunstill v. State*, 568 N.E.2d 539, 544 (Ind.1991). However, it may appropriately be considered as an aggravator under Indiana Code Section 35–38–1–7.1(d), which "gives a sentencing court the flexibility to consider any factor which reflects on the defendant's character, good or bad, in addition to those expressly set out in the rest of the statute when determining the appropriate sentence to impose on that defendant." *Id.* at 545. As our supreme court stated in *Tunstill:*

> While a record of arrests does not establish the historical fact of prior criminal behavior, such a record does reveal to the court that subsequent antisocial behavior on the part of the defendant has

not been deterred even after having been subject to the police authority of the State and made aware of its oversight of the activities of its citizens. This information is relevant to the court's assessment of the defendant's character and the risk that he will commit another crime and is therefore properly considered by a court in determining sentence.

*Id.*

■ It is unclear from the instant sentencing statement whether the trial court considered Armstrong's arrests and pending charges as part of his criminal history under Indiana Code Section 35–38–1–7.1(b)(2) or merely as evidence of his character under Indiana Code Section 35–38–1–7.1(d). It appears, however, that the trial court soundly utilized those arrests and pending charges in making a character assessment that Armstrong was an extremely violent and "very dangerous" person. Record at 829. Regardless, even assuming the trial court improperly inferred that the arrests and pending charges constituted historical facts that Armstrong had committed the crimes, any such error would be harmless given his criminal history. *See Johnson v. State*, 725 N.E.2d 864, 868 (Ind.2000) (concluding that inappropriate use of one aggravator did not make sentence manifestly unreasonable, where only one valid aggravator was necessary to support enhanced sentence).

**2. Need for Correctional Treatment**

■ We next address Armstrong's contention that the trial court did not sufficiently explain why he required correctional treatment in a penal facility for a term in excess of the presumptive sentence. It is well settled that the need for correctional treatment best served by commitment

---

5. *See* IND.CODE § 35–50–2–6(a) (presumptive sentence for Class C felony is four years, with not more than four years added for aggravating circumstances); IND.CODE § 35–50–2–7 (presumptive sentence for Class D felony is one and one-half years, with not more than one and one-half years added for aggravating circumstances); IND.CODE § 35–50–3–2 (maximum sentence for Class A misdemeanor is one year).

to a penal facility is a proper aggravator only when the trial court articulates why the specific defendant requires treatment for a period of time in excess of the presumptive sentence. *Bluck,* 716 N.E.2d at 512. Stated otherwise, to properly enhance the defendant's sentence by using Indiana Code Section 35–38–1–7.1(b)(3), "the trial court must explain why [the defendant] is in need of *more* correctional treatment." *Ridenour v. State,* 639 N.E.2d 288, 297 (Ind.Ct.App.1994).

■ Contrary to Armstrong's assertion that the trial court did not make the necessary articulation in concluding he was in need of more correctional treatment, the sentencing statement reflects that the court based its conclusion on Armstrong's prior unsuccessful attempts at rehabilitation through prison and probation. This was proper. *See Johnson,* 725 N.E.2d at 868 (holding that need for correctional treatment was proper aggravator where defendant had previously and unsuccessfully been placed on juvenile probation and adult probation, had been to prison, and was on parole when he committed present offense).

### 3. Nature and Circumstances of the Crime

■ Armstrong further alleges that the trial court's consideration of the nature and circumstances of the crimes he committed is "so brief and conclusory that it is impossible to determine whether the court [improperly relied on an element of the offenses to enhance his sentence]." Reply Brief of Appellant at 8. We acknowledge that a "perfunctory recitation" and conclusory listing of the factors mandated by statute to be considered is not sufficient to afford an adequate review of the appropriateness of the sentence imposed on a criminal defendant. *Shackelford v. State,* 622 N.E.2d 1340, 1345 (Ind.Ct.App.1993). In addition, a fact which comprises a material element of the crime may not also constitute an aggravating circumstance to support an enhanced sentence. *Id.* at 1346.

This notwithstanding, we disagree with Armstrong's contention.

■ Indiana Code Section 35–38–1–7.1(a)(2) provides that the nature and circumstances of a crime shall be considered in determining what sentence to impose. The trial court's sentencing statement adequately supported the finding of this aggravating factor by noting that Armstrong's "behavior ... was reprehensible" and that he "terrorized ... a household full of ... not only ... adults but children." Record at 829; *see Jones v. State,* 675 N.E.2d 1084, 1087 (Ind.1996) (approving trial court's finding of aggravator that defendant committed murder when there were others present, including children). The trial court's sentencing statement makes clear that it was not the pointing or shooting of the handgun that was the aggravating circumstance but the manner in which those offenses were committed. This was a proper use of the nature and circumstances of the crimes committed as an aggravating factor. *See Adkins v. State,* 561 N.E.2d 787, 789 (Ind.1990).

■ In sum, the trial court sufficiently identified the aggravating and mitigating circumstances in this case and articulated its balancing process when it determined that the aggravating circumstances outweighed the single mitigator. *See Bluck,* 716 N.E.2d at 511. Specifically, the trial court's remarks indicate that it did not give great weight to Armstrong's remorse for committing the crimes and, indeed, that his remorse was "a little bit too late." Record at 829. It is within a trial court's discretion to determine both the existence and weight of a significant mitigating circumstance. *Allen v. State,* 722 N.E.2d 1246, 1251 (Ind.Ct.App.2000). The trial court did not abuse its discretion when it enhanced Armstrong's sentence.

As discussed previously, however, we conclude that Armstrong's aggregate sentence for three counts of pointing a firearm arising out of a single episode of criminal conduct should not have exceeded

the four-year presumptive sentence for a Class C felony. *See* IND.CODE § 35–50–1–2(c); *see also* Discussion, Issue one. Accordingly, we must reverse his nine-year sentence with respect to the pointing a firearm offenses and remand to the trial court with instructions for resentencing consistent with the principles set forth in this opinion. In all other respects, Armstrong's sentence is affirmed.

Affirmed in part, reversed in part and remanded for resentencing.

SHARPNACK, C.J., and BROOK, J., concur.