Demetreous BROWN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0206–CR–281.

Court of Appeals of Indiana.

July 2, 2003.

Mark Small, Marion County Public Defender, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Demetreous Brown appeals his three convictions for pointing a firearm as class D felonies.[1] Brown raises two issues, which we restate as:

   I.  Whether the evidence is sufficient to sustain his pointing a firearm convictions as class D felonies because the State did not prove that the gun was loaded; and

  II.  Whether the evidence is sufficient to sustain his three separate convictions for pointing a firearm.

We affirm.

The relevant facts follow. On July 25, 2001, Brown, Robert Dunlap, Anthony Hunt, James Campbell, and Dante Tate were working the second shift at Heritage Crystal Clean ("Heritage"). During their 5:00 p.m. break, the men sat outside and Dunlap was stung by a bee. They all laughed about the incident, but apparently Brown laughed too long and Dunlap called Brown a derogatory name. Brown took offense to Dunlap's comment and attempted to hit Dunlap, but struck Campbell instead. Brown and Dunlap then got into a fist fight. After the fight, Brown went to his car and got a gun. Dunlap also went to his car and got a gun.

Lloyd Carter, the supervisor, was notified of the fight and came outside. Brown and Dunlap started to argue again in the parking lot. Carter told Brown to leave the premises. After Carter retrieved Brown's shoes, Brown left. However, during breaks throughout the evening, the men saw Brown in a vehicle outside of the gate.

At the end of the shift, Dunlap, Campbell, Hunt, and Tate were leaving work. Dunlap drove his vehicle and Campbell drove another vehicle with Hunt and Tate as passengers. Campbell, Hunt, and Tate were following Dunlap to his residence. As Dunlap exited the parking lot, Brown pulled his vehicle behind Dunlap's vehicle and in front of Campbell's vehicle. Dunlap turned into a gas station parking lot and the two other cars stopped nearby. Brown and two other men got out of Brown's car carrying guns and walked up to Campbell's vehicle. Brown ordered Tate to get out of Campbell's vehicle and get into Brown's vehicle. According to Dunlap, the men were pointing guns at the people in Campbell's car. Hunt testified that Brown was "pointing [the gun] at all of us." Transcript at 109. Hunt also testified that Brown "pointed [the gun] at all three of us" by waving it. *Id.* at 114. Brown and the other two men eventually got back into their car, saw Dunlap, and followed him again. Dunlap went to a nearby Speedway Police Department Station. Campbell and Hunt also flagged down a police officer.

---

**1.** Ind.Code § 35–47–4–3(b) (1998).

The State charged Brown with three counts of criminal confinement as class B felonies,[2] three counts of pointing a firearm as class D felonies, and one count of battery as a class A misdemeanor.[3] During the bench trial, Brown conceded that he was guilty of the battery charge. The trial court found Brown guilty of three counts of pointing a firearm as class D felonies and one count of battery as a class A misdemeanor, but not guilty of the criminal confinement charges. At the sentencing hearing, Brown asked the trial court to reduce his pointing a firearm convictions to class A misdemeanors because, according to Brown, the State had not proven that the gun was loaded. The trial court sentenced Brown to three years in the Indiana Department of Correction, with one and one-half years suspended and one year of probation, for each of the three pointing a firearm as class D felonies convictions and one year for the battery conviction. The trial court ordered that the sentences be served concurrently.

Brown challenges the sufficiency of the evidence to sustain his convictions. Our standard of review for sufficiency claims is well settled. We do not reweigh evidence or assess the credibility of witnesses. *Maul v. State*, 731 N.E.2d 438, 439 (Ind.2000). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict. *Id.* We will affirm the conviction if there is probative evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

## I.

The first issue is whether the evidence is sufficient to sustain Brown's pointing a firearm convictions as class D felonies because the State did not prove that the gun was loaded. Ind.Code § 35–47–4–3(b) provides that: "A person who knowingly or intentionally points a firearm at another person commits a Class D felony. However, the offense is a Class A misdemeanor if the firearm was not loaded." Brown argues that the State presented no evidence or inferences from the evidence that the firearm was loaded and, thus, his convictions should have been class A misdemeanors rather than class D felonies.

The State admits that "[n]o evidence was presented either way to show that [Brown's] gun was or was not loaded." Appellee's Brief at 7. However, the State argues that Ind.Code § 35–47–4–3(b) does not require the State to prove that the firearm was loaded in order to obtain a class D felony conviction. Rather, according to the State, the class D felony is the presumptive level for this crime. The offense is a class A misdemeanor only if the evidence "affirmatively shows that the firearm was not loaded." *Id.* at 5. Thus, the State contends that although most criminal statutes "recite a baseline offense and then enumerate the various factors which, if proven, enhance the level of that offense," the pointing a firearm statute is written such that the baseline offense is a class D felony and, if it is proven that the firearm was not loaded, the offense is reduced to a class A misdemeanor. *Id.* at 6. We agree.

The primary rule in statutory construction is to ascertain and give effect to the intent of the legislature. *Hendrix v. State*, 759 N.E.2d 1045, 1047 (Ind.2001). "The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless otherwise indicated

---

**2.** Ind.Code § 35–42–3–3 (1998).

**3.** Ind.Code § 35–42–2–1 (Supp.2001).

by statute." *Id.* In construing a statute, we must give effect to every word and clause. *Saintignon v. State*, 749 N.E.2d 1134, 1137 (Ind.2001). We presume that the legislature intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result. *Sales v. State*, 723 N.E.2d 416, 420 (Ind.2000).

Ind.Code § 35–47–4–3(b) initially provides that "[a] person who knowingly or intentionally points a firearm at another person commits a Class D felony." I.C. § 35–47–4–3(b). The language used by the legislature indicates a clear intent that the State is not required to prove that the firearm was loaded in order to obtain a conviction for the offense of pointing a firearm as a class D felony. The statute then provides that "the offense is a Class A misdemeanor if the firearm was not loaded." I.C. § 35–47–4–3(b). Thus, a defendant is entitled to a class A misdemeanor rather than a class D felony only if the evidence affirmatively demonstrates that the firearm was not loaded.

If the legislature had intended that the State be required to prove that the firearm is loaded to obtain a class D felony conviction, the legislature could have easily done so by inserting the word "loaded" into statutory provision regarding a class D felony. As such, the relevant section of the statute would read: "A person who knowingly or intentionally points a loaded firearm at another person commits a Class D felony." Alternatively, the legislature could have structured the statute as follows: "A person who knowingly or intentionally points a firearm at another person commits a class A misdemeanor. However, the offense is a class D felony if the firearm was loaded." In these options, the State would have to affirmatively prove that the firearm was loaded to obtain a class D felony conviction. The statutory provision adopted by the legislature does not indicate such an intent. Rather, the statutory language indicates a clear intent that the State is not required to prove that a firearm was loaded in order to obtain a conviction for pointing a firearm as a class D felony.

Our discussion of the statutory language is consistent with the policy behind the pointing a firearm statute. In *Armstrong v. State*, 742 N.E.2d 972, 976 (Ind.Ct.App. 2001), we noted that we could "envision no situation in which pointing a loaded gun at another person does not create a substantial risk of death or bodily injury to that person." *Id.* It is "common knowledge that numerous persons are killed each year by guns which the handlers thereof did not realize were loaded, or thought were unloaded, which were in fact loaded." *Id.* Furthermore, the statutory scheme for the pointing a firearm offense recognizes the difficulty of proving that a person pointed a loaded firearm if, as here, the gun is not fired or recovered during the episode.[4]

---

4. The legislature has used a somewhat similar scheme for the crime of carrying a handgun without a license. There, Ind.Code § 35–47–2–1 provides that "a person shall not carry a handgun in any vehicle or on or about his person, except in his dwelling, on his property or fixed place of business, without a license issued under this chapter being in his possession." Further, possession of a valid license is an affirmative defense for which a defendant bears the burden of proof. *See* Ind.Code § 35–47–2–24 ("The burden of proof is on the defendant to prove that … he has a license as required under this chapter."). We have noted that:

the lack of a valid license to carry a handgun is not an element of the crime of possession of a handgun and, therefore, a defendant may bear the burden of proving that issue without violating his constitutional rights. This burden is shifted to the defendant because this is information which is readily available to the defendant

Consequently, we conclude that the State was not required to prove that Brown's weapon was loaded in order to convict him of a class D felony.[5] None of the evidence presented at trial proved that Brown's weapon was unloaded. Thus, the evidence was sufficient to convict Brown of pointing a firearm as class D felonies rather than as class A misdemeanors.

## II.

■ The next issue is whether the evidence is sufficient to sustain Brown's three separate convictions for pointing a firearm. Brown was convicted of three counts of pointing a firearm as a class D felony for pointing his handgun at Campbell, Hunt, and Tate. Brown argues that the charged acts "arose in the context of a fast-paced, single, and continuous incident." Appellant's Brief at 13. Consequently, Brown argues that he could only be convicted of one count of pointing a firearm.

Brown relies upon *Armstrong*, 742 N.E.2d at 975–977. In *Armstrong*, the defendant was charged with three counts of pointing a firearm after he went to his ex-girlfriend's house and pointed his gun at her boyfriend. *Id.* at 975. The defendant then pointed the gun at his ex-girlfriend and told her to "get back." *Id.* He chased the boyfriend and pointed his gun at two other people when they tried to stop him. *Id.* He then shot and killed the boyfriend. *Id.* The defendant was charged with murder and three counts of pointing a firearm as a result of pointing his gun at

his ex-girlfriend and the two other people. *Id.* at 975 n. 1.

The defendant argued that he could not be held liable for the three counts of pointing a firearm because the charges stemmed from a single incident. *Id.* at 976. We held that Ind.Code § 35–47–4–3 "proscribes in no uncertain terms the knowing or intentional pointing of a firearm 'at another person,' regardless of whether that firearm is loaded." *Id.* We reasoned that "the statute was intended to protect individuals from being placed in danger of death or bodily injury from the discharge of a firearm." *Id.* Further, "the harm caused by a single incident of pointing a firearm is not the same regardless of the number of persons at whom the defendant points his weapon." *Id.* We pointed out that if the legislature had intended to preclude multiple charges and convictions under Ind.Code § 35–47–4–3, that section would read: "A person who knowingly or intentionally points a firearm at another person or persons commits a Class D felony." *Id.*

Consequently, in *Armstrong*, we held that "while all three of Armstrong's convictions for pointing a firearm [stemmed] from a single incident, the evidence show[ed] that he pointed a handgun at three individuals...." *Id.* We further held that the record supported "an inference that these were three separate and distinct pointings of a firearm rather than one continuous action." *Id.* at 976–977. Thus, we affirmed the defendant's convictions. *Id.* at 977. However, in a footnote, we

and the State would face enormous difficulty in eliminating all possibilities of lawful possession of the weapon.
*Fields v. State*, 676 N.E.2d 27, 30 (Ind.Ct.App. 1997) (internal citations omitted), *trans. denied.*

5. Although another panel of this court noted in *Nantz v. State*, 740 N.E.2d 1276, 1279 (Ind.Ct.App.2001), *trans. denied*, that "[t]o

convict Nantz of pointing a firearm as a Class D felony the State was required to prove that he knowingly or intentionally pointed a loaded firearm at another person," it was undisputed in *Nantz* that the weapon was loaded. Thus, *Nantz* did not reach the issue of whether the State was required to prove that the defendant's weapon was loaded to obtain a class D felony conviction.

declined to decide "whether a defendant may be charged with and convicted of multiple counts of pointing a firearm arising out of a single incident during which the defendant engages in one continuous action of pointing a firearm, such as when a defendant waves a gun indiscriminately toward a crowd of people" because those were not the facts of *Armstrong*. *Id.* at 977 n. 2. Brown argues that we must decide this issue today.

We conclude that the evidence at trial supports an inference that Brown pointed his gun at the men in Campbell's car. Specifically, Dunlap testified that the men with the guns—Brown and the two other men—were pointing their guns at the people in Campbell's car. Transcript at 40. Hunt testified that Brown was "pointing [the gun] at all of us." *Id.* at 109. Hunt also testified that Brown "pointed [the gun] at all three of us" by waving it. *Id.* at 114. Thus, we conclude that the evidence is sufficient to sustain Brown's convictions.

However, we recognize that this testimony is subject to differing interpretations. Even if the testimony is interpreted to mean that Brown "waved" the gun at the vehicle's occupants, we conclude that the evidence is sufficient to sustain his convictions. We have previously held that "the statute was intended to protect individuals from being placed in danger of death or bodily injury from the discharge of a firearm." *Armstrong*, 742 N.E.2d at 976. By waving a firearm at individuals in the confined space of an automobile, Brown put each occupant at risk of injury from the discharge of the firearm. Consequently, the multiple convictions are supportable. The State presented probative evidence from which a reasonable trier of fact could have found Brown guilty beyond a reasonable doubt of three counts of pointing a firearm. *See, e.g., Armstrong*, 742 N.E.2d at 977.

For the foregoing reasons, we affirm Brown's convictions for pointing a firearm as class D felonies.

Affirmed.

KIRSCH, J., concurs.

SULLIVAN, J., concurs in part and dissents in part with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

The majority attributes to the phrasing of the statute a clarity which I believe is absent. The statute is poorly drafted and, as observed by the majority, is subject to differing constructions. *See* Op. at 1064–1065.

For example, one might argue, with more than a degree of merit, that if the evidence is totally lacking with regard to whether the weapon was loaded or unloaded, a jury could not convict of an A misdemeanor because the "unloaded" element of the offense has not been established. This leads to a conclusion that the statute in fact makes the matter of an unloaded firearm an affirmative defense upon which the defendant bears the burden of proof.

Subject to the above caveat, I agree that it is not necessary for the State to prove that the firearm was loaded in order to obtain a D felony conviction.

I respectfully dissent, however, from the affirmance of the three separate and distinct convictions. Here there was no evidence, as was present in *Armstrong v. State*, 742 N.E.2d 972, 976–977 (Ind.Ct. App.2001) that there were "three separate and distinct pointings of a firearm rather than one continuous action."

To the contrary, as noted by the majority, the evidence disclosed that Brown pointed his gun "at the people in Camp-

bell's car," that he was "pointing [the gun] *at all of us*," and that he "pointed [the gun] at *all three of us*" by waving it. Op. at 1066 (emphasis supplied).

I would reverse and remand with instructions to vacate two of the three convictions.