**Henry J. ADKINS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 20A03–0608–CR–351.**

Court of Appeals of Indiana.

July 19, 2007.

 

 

 

 

 

 

 

 

 

 

 

 

Nancy A. McCaslin, McCaslin & McCaslin, Elkhart, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

1. Ind.Code § 35–47–4–3 (2004).

## OPINION

SHARPNACK, Judge.

Henry J. Adkins appeals his conviction for pointing a firearm as a class D felony.[1] Adkins raises two issues, which we restate as:

I. Whether the trial court abused its discretion when it did not allow Adkins's wife to testify as a witness; and

II. Whether the trial court erred when it instructed the jury regarding the elements of the offense.

We affirm.

The relevant facts follow. On June 2, 2004, Adkins and his brother came into Jason Boze's apartment. Boze was watching television with Ivy Walters, Justin Leason, and Lynndsey Felton. Adkins pointed a gun at Boze's neck and said, "don't ever mess with my cousin again." Transcript at 43. Adkins also pointed the gun at Walters and Leason. Adkins and his brother took Boze's phone and smashed it on the sidewalk outside. When Adkins was outside, he fired the gun into the air and said, "next time this is going to be you." *Id.* at 47.

The State charged Adkins with pointing a firearm as a class D felony. Adkins filed a notice of alibi, which alleged that he was "at work, in the City of Muncie, County of Delaware, Indiana" on the date of the offense. Appellant's Appendix at 24. Prior to the jury trial, the State filed a motion in limine seeking to exclude third-party evidence related to his alibi due to lack of specificity in the notice of alibi. At the start of the jury trial, the trial court granted the State's motion in limine. Boze testified that Adkins and his brother came to the apartment, while Walters testified that

Adkins, his brother, Adkins' wife, and his brother's wife came into the apartment. Walters also testified that she did not know Adkins' wife and that Boze told her the woman was Adkins' wife.

After the State rested, Adkins attempted to call Amanda Adkins, his wife, as a witness. The State objected to Adkins calling Amanda as a witness because she had not been disclosed as a witness. Adkins also claimed that Amanda was a rebuttal witness because Walters had testified that Adkins's wife was also in Boze's apartment on the night in question. The State objected because Walters did not identify Amanda as the woman in the apartment. The trial court sustained the State's objection because "to say it was someone's wife is not the same as saying that a particular person is the person described as someone's wife." Transcript at 84. Adkins then testified that he was "at home" on the evening in question, but he did not say that he was with his wife. *Id.* at 86. After Adkins testified, his counsel again attempted to call Amanda as a witness, and the trial court stated, "I haven't heard anything that would make me change my prior ruling." *Id.* at 95. The State asked for an admonition, and the trial court admonished the jury that "[t]he court has ruled that Mr. Adkins [sic] wife cannot be called for reasons of procedural matters that happened outside the courtroom. So you are not to consider that at all as part of your deliberations." *Id.*

When discussing jury instructions, Adkins's counsel asked for a delineation between pointing a loaded firearm and pointing an unloaded firearm in the instruction, and the State agreed. The trial court then prepared instructions, and Adkins objected to the following instruction, which provided:

The crime of pointing a firearm is defined as in relevant part as follows:

"A person who knowingly points a handgun at another person commits an offense."

To convict the defendant, the State must have proved each of the following elements: The defendant (1) knowingly (2) pointed (3) a firearm (4) at Jason Boze.

A person engages in conduct knowingly if when he engages in the conduct, he is aware of a high probability that he is engaging in the conduct.

If the State failed to prove beyond a reasonable doubt any of the elements of pointing a firearm, then you must find the defendant not guilty of pointing a firearm.

If the defendant [sic] did prove beyond a reasonable doubt all of these elements, then and only then, may you find the Defendant guilty of pointing a firearm.

However, if the State proved all of the elements of pointing a firearm but the defendant proved by a preponderance of the evidence that the firearm was unloaded, then and only then, may you find the defendant guilty of pointing an unloaded firearm. To prove a proposition by a preponderance of the evidence, a party must convince you that the proposition is more probably true than not true.

*Id.* at 122–123.

Specifically, Adkins objected to the instruction and argued that it shifted the burden of proving that the gun was unloaded to the defendant. The trial court noted that the language was from a pattern jury instruction, overruled Adkins's objection, and instructed the jury. The trial court also instructed the jury that:

These instructions contain no information about any penalty which might be imposed after a conviction. The judge

bears sole responsibility for assessing the penalty within a broad range of possibilities. The law has been written to allow you to make your decision without being influenced by any apparent leniency or severity of punishment.

*Id.* at 123. The jury found Adkins guilty of pointing a firearm as a class D felony. The trial court sentenced Adkins to serve three years and recommended that the time be served in a work release program.

## I.

■ The first issue is whether the trial court abused its discretion when it did not allow Adkins's wife to testify as a witness. We review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Guillen v. State,* 829 N.E.2d 142, 145 (Ind.Ct.App.2005), *trans. denied.* We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.* On appeal, a claim of error in the admission or exclusion of evidence will not prevail "unless a substantial right of the party is affected." *Pruitt v. State,* 834 N.E.2d 90, 117 (Ind.2005) (quoting Ind. Evidence Rule 103(a)), *reh'g denied, cert. denied,* —— U.S. ——, 126 S.Ct. 2936, 165 L.Ed.2d 962 (2006). "Whether an appellant's substantial rights are affected is determined by examining the 'probable impact of that evidence upon the jury.'" *Id.* (quoting *Corbett v. State,* 764 N.E.2d 622, 628 (Ind. 2002)).

First, the State argues that Adkins waived this issue by failing to make an offer to prove. Ind. Evidence Rule 103(a) provides:

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

* * * * *

(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked.

While Adkins did not make an offer of proof here regarding Amanda's testimony, it was apparent from the context that Amanda would testify that she was not in Boze's apartment on the evening in question. Thus, we will address Adkins's argument on the merits. *See, e.g., Bedree v. Bedree,* 747 N.E.2d 1192, 1196 (Ind.Ct. App.2001) (holding that the substance of the evidence the witness would be giving was apparent from the context of the case and that an offer of proof was not strictly necessary), *reh'g denied, trans. denied.*

We take the trial court's comment that "to say it was someone's wife is not the same as saying that a particular person is the person described as someone's wife," to mean that Amanda's testimony would not be impeaching. Transcript at 84. Although Amanda's testimony might have been impeaching to a certain extent and the trial court's later comments to the jury regarding the exclusion of Amanda's testimony likely highlighted the absence of the testimony, we conclude that Adkins's substantial rights were not affected by the exclusion of Amanda's testimony. Evidence Amanda was not present would not have affected Adkins's substantial rights in light of the fact that Walters's identification of the woman was not based on familiarity with Adkins's wife, Amanda, but on others telling her the individual with Adkins was his wife. Given that, together with Boze's testimony that Adkins was in the apartment and Adkins not testifying that he was with his wife at the time of the incident, any error in the exclusion of Amanda's testimony did not affect Ad-

kins's substantial rights. *See, e.g., Farris v. State,* 818 N.E.2d 63, 70 (Ind.Ct.App. 2004) (holding that the trial court's exclusion of a witness was erroneous, but the error was harmless), *trans. denied.*

## II.

■ The next issue is whether the trial court erred when it instructed the jury regarding the elements of the offense. "The trial court has discretion in instructing the jury, and we will reverse only when the instructions amount to an abuse of discretion." *Whitney v. State,* 750 N.E.2d 342, 344 (Ind.2001). "Jury instructions are to be considered as a whole and in reference to each other." *Id.* When determining whether a trial court erroneously gave or refused to give a tendered instruction, we consider the following: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given. *Mayes v. State,* 744 N.E.2d 390, 394 (Ind.2001). "An error in a particular instruction results in reversal only where the entire body of instructions misleads the jury as to the law in the case." *Helsley v. State,* 809 N.E.2d 292, 303 (Ind.2004).

The offense of pointing a firearm is governed by Ind.Code § 35-47-4-3(b), which provides: "A person who knowingly or intentionally points a firearm at another person commits a Class D felony. However, the offense is a Class A misdemeanor if the firearm was not loaded." The trial court instructed the jury that:

The crime of pointing a firearm is defined as in relevant part as follows:

"A person who knowingly points a handgun at another person commits an offense."

To convict the defendant, the State must have proved each of the following elements: The defendant (1) knowingly (2) pointed (3) a firearm (4) at Jason Boze.

A person engages in conduct knowingly if when he engages in the conduct, he is aware of a high probability that he is engaging in the conduct.

If the State failed to prove beyond a reasonable doubt any of the elements of pointing a firearm, then you must find the defendant not guilty of pointing a firearm.

If the defendant [sic] did prove beyond a reasonable doubt all of these elements, then and only then, may you find the Defendant guilty of pointing a firearm.

However, if the State proved all of the elements of pointing a firearm but the defendant proved by a preponderance of the evidence that the firearm was unloaded, then and only then, may you find the defendant guilty of pointing an unloaded firearm. To prove a proposition by a preponderance of the evidence, a party must convince you that the proposition is more probably true than not true.

Transcript at 122–123.

■ Adkins makes two arguments concerning this instruction. First, Adkins mentions that the instruction should have clarified that the offense of pointing a firearm is a class D felony and that the offense of pointing an unloaded firearm is a class A misdemeanor. However, Adkins makes no further argument concerning this issue and cites no authority for this proposition. Assuming no waiver of the argument, the Indiana Supreme Court has held that the jury plays no role in the sentencing of defendants and thus any possible penalty faced by a particular defendant is irrelevant for a jury's consider-

ation. *Quick v. State,* 660 N.E.2d 598, 601 (Ind.Ct.App.1996) (citing *Salahuddin v. State,* 492 N.E.2d 292, 295 (Ind.1986), and *Wisehart v. State,* 484 N.E.2d 949, 953 (Ind.1985), *reh'g denied, cert. denied,* 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556 (1986)), *reh'g denied.* Consequently, a trial court does not err when it refuses to provide such information to a jury. *Id.* (citing *Salahuddin,* 492 N.E.2d at 295).

■ Second, Adkins argues that the instruction incorrectly states the law because it improperly shifted the burden of proving that the gun was unloaded to him. In general, the Fourteenth Amendment requires the State to prove every material element of a criminal offense beyond a reasonable doubt, and a jury instruction that shifts the State's burden to the defendant is a Due Process violation. *Sandstrom v. Montana,* 442 U.S. 510, 524, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979); *McCorker v. State,* 797 N.E.2d 257, 263 (Ind.2003). The relevant portion of the instruction provided:

> However, if the State proved all of the elements of pointing a firearm but the defendant proved by a preponderance of the evidence that the firearm was unloaded, then and only then, may you find the defendant guilty of pointing an unloaded firearm. To prove a proposition by a preponderance of the evidence, a party must convince you that the proposition is more probably true than not true.

Appellant's Appendix at 51. The instruction followed the Indiana Pattern Jury Instructions. *See* Indiana Pattern Jury Instructions—Criminal § 7.61 (3rd ed.2006).

This court interpreted the pointing a firearm statute in *Brown v. State,* 790 N.E.2d 1061 (Ind.Ct.App.2003). There, we concluded that, under the statute, "the State is not required to prove that a firearm was loaded in order to obtain a convic-

tion for pointing a firearm as a class D felony." 790 N.E.2d at 1064. Further, "a defendant is entitled to a class A misdemeanor rather than a class D felony only if the evidence affirmatively demonstrates that the firearm was not loaded." *Id.* Judge Sullivan concurred on this point and observed:

> The majority attributes to the phrasing of the statute a clarity which I believe is absent. The statute is poorly drafted and, as observed by the majority, is subject to differing constructions. See Op. at 1064–1065.

> For example, one might argue, with more than a degree of merit, that if the evidence is totally lacking with regard to whether the weapon was loaded or unloaded, a jury could not convict of an A misdemeanor because the "unloaded" element of the offense has not been established. This leads to a conclusion that the statute in fact makes the matter of an unloaded firearm an affirmative defense upon which the defendant bears the burden of proof.

> Subject to the above caveat, I agree that it is not necessary for the State to prove that the firearm was loaded in order to obtain a D felony conviction.

*Id.* at 1066.

Following *Brown,* the Indiana Pattern Jury Instruction was amended and the comment to the instruction now provides: "The Indiana Court of Appeals has recently held that the pointing a firearm offense was intended to require the Defendant to prove that the firearm was not loaded in order to obtain A misdemeanor sentencing. *Brown v. State,* 790 N.E.2d 1061 (Ind.Ct. App.2003)." Comment to Indiana Pattern Jury Instructions—Criminal 7.61. To the contrary, although mentioned briefly in Judge Sullivan's concurring opinion, the majority opinion in *Brown* did not hold

that the defendant was required to prove that the firearm was unloaded.[2]

■ Despite the discrepancy between *Brown* and the comments to the Indiana Pattern Jury Instruction, we cannot say that the Pattern Jury Instruction or the instruction given here by the trial court is incompatible with *Brown* or the statute. Judge Sullivan correctly observed in his concurrence in *Brown* that, although not specifically stated by the statute, the ultimate effect of the statute is to make the matter of an unloaded firearm an affirmative defense upon which the defendant bears the burden of proof. Consequently, we conclude that the instruction correctly states the law.

■ Moreover, even if the instruction given by the trial court was erroneous, any error was harmless. Such an instruction error "will not require reversal of a conviction where, after review of the entire record, the reviewing court concludes the error was harmless beyond a reasonable doubt." *Collins v. State,* 567 N.E.2d 798, 801 (Ind.1991) (citing *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), and *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), *reh'g denied).* Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise. *Dill v. State,* 741 N.E.2d 1230, 1233 (Ind.2001). An instruction error will result in reversal when the reviewing court "cannot say with complete confidence" that a reasonable jury would have rendered a guilty verdict had the instruction not been given. *Id.*

Here, Boze testified that Adkins left the apartment, told Boze, "next time this is going to be you," and fired the gun into the air. Transcript at 47. Walters testified that she heard Adkins "whooping and hollering" outside and then heard gunshots. *Id.* at 71. Leason also testified that he heard gunshots when Adkins went outside. We conclude that any error in the instruction due to shifting the burden of proof that the gun was unloaded was harmless. The evidence demonstrated that the gun was loaded, and Adkins's only defense was that he was in a different city at the time of the incident. *See, e.g., Ham v. State,* 826 N.E.2d 640, 642 (Ind.2005) (holding that, while the instruction was erroneous, the error was harmless in light of the evidence the State produced of the defendant's guilt); *McNary v. State,* 428 N.E.2d 1248, 1251 (Ind.1981) (holding that, while the trial court erred in instructing the jury, the error was harmless because the evidence was uncontradicted that bodily injury occurred in the commission of the offense and the defendant's sole defense was a question of identity).

For the foregoing reasons, we affirm Adkins's conviction for pointing a firearm as a class D felony.

Affirmed.

SULLIVAN, J., concurs.

CRONE, J., concurs as to Issue I and concurs in result as to Issue II with separate opinion.

CRONE, Judge, concurring as to Issue I and concurring in result as to Issue II.

I fully concur with the majority's resolution of Issue I. With respect to Issue II, however, I respectfully disagree with the majority's determination that the trial

---

**2.** We recognize, however, that the practical effect of *Brown* was to make "unloaded" a fact as to which the defendant would have to produce evidence, if there otherwise would be no such evidence.

court's instruction on pointing a handgun correctly states the law.

As Judge Sullivan stated in *Brown,* Indiana Code Section 35–47–4–3 is "poorly drafted" and "subject to differing constructions." 790 N.E.2d at 1066 (Sullivan, J., concurring in part). I do not believe, however, that the statute may be construed so as to make "the matter of an unloaded firearm an affirmative defense upon which the defendant bears the burden of proof." *Id.*

"An affirmative defense admits all the elements of the crime but proves circumstances which excuse the defendant from culpability." *Melendez v. State,* 511 N.E.2d 454, 457 (Ind.1987). Two common affirmative defenses are self-defense and entrapment. *See Moon v. State,* 823 N.E.2d 710, 716 (Ind.Ct.App.2005) ("Self-defense ... and entrapment ... both are defenses of justification, admitting that the facts of the crime occurred but contending that the acts were justified. As such, these defenses negate no element of the crime.") (citation omitted), *trans. denied.* In *Brown,* the court properly concluded that the matter of a loaded firearm is not an element of class D felony pointing a firearm. *See Brown,* 790 N.E.2d at 1064 ("[T]he statutory language indicates a clear intent that the State is not required to prove that a firearm was loaded in order to obtain a conviction for pointing a firearm as a class D felony."). Thus, a defendant who claims that his firearm was unloaded is not attempting to negate an element of the crime, but rather to prove a mitigating factor that reduces, but not wholly excuses, his culpability.

In this sense, the matter of an unloaded firearm is akin to sudden heat, which "is a mitigating factor that reduces otherwise murderous conduct to voluntary manslaughter, but is not an element of voluntary manslaughter." *Boone v. State,* 728 N.E.2d 135, 138 (Ind.2000) (footnote omitted). As our supreme court explained in *Finch v. State,*

> While it is plainly the State's burden to prove the existence of each element of a crime by substantial evidence beyond a reasonable doubt, it is not the State's burden to prove the existence of a mitigating factor, such as the presence of sudden heat. Rather, the defendant must prove the existence of sudden heat in order to reduce murder to voluntary manslaughter.[3] The introduction of the issue of sudden heat into the case places a burden on the State to negate the defense beyond a reasonable doubt and calls for an instruction on the lesser included offense of voluntary manslaughter. The trier of fact must then resolve the question of whether a defendant acted under sudden heat.

510 N.E.2d 673, 675 (Ind.1987) (citations omitted). I believe that the same procedure should be followed with respect to the matter of an unloaded firearm and that the jury should be instructed accordingly.

Although the jury was not so instructed in this case, I agree with the majority that any error was harmless in this case. Therefore, I concur in result as to Issue II.

---

3. The defendant need not establish the existence of sudden heat by a preponderance of the evidence. *See Trueblood v. State,* 715 N.E.2d 1242, 1249 (Ind.1999) ("Although the State has the burden of disproving sudden heat beyond a reasonable doubt, in order to inject that issue at all, the defendant must point to *some evidence* supporting sudden heat.") (emphasis added), *cert. denied* (2000).