Teddy F. MURRAY, Appellant–
Defendant,

v.

STATE of Indiana, Appellee.

No. 01A02–0303–CR–225.

Court of Appeals of Indiana.

Nov. 19, 2003.

Susan K. Carpenter, Public Defender of Indiana, Lorraine L. Rodts, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

SULLIVAN, Judge.

Appellant, Teddy Murray, appeals from his convictions for Possession of Chemical Reagents or Precursors with the Intent to Manufacture Methamphetamine, a Class C felony ("possession of precursors"),[1] Operating a Motor Vehicle After Having Been Adjudged an Habitual Traffic Offender, a Class D felony,[2] Receiving Stolen Property, a Class D felony,[3] Resisting Law Enforcement, a Class D felony,[4] and Criminal

1. Ind.Code § 35–48–4–14.5 (Burns Code Ed. Supp.2003).

2. Ind.Code § 9–30–10–16 (Burns Code Ed. Supp.2003).

3. Ind.Code § 35–43–4–2 (Burns Code Ed. Repl.1998).

4. Ind.Code § 35–44–3–3 (Burns Code Ed. Repl.1998).

Recklessness, a Class A misdemeanor.[5] Murray also appeals from the determination that he is an habitual substance offender.[6] Upon appeal, Murray presents three issues for our review, which we renumber and restate as:

I. Whether the trial court erred in instructing the jury,

II. Whether the crime of possession of chemical reagents or precursors with intent to manufacture methamphetamine is a "substance offense" for purposes of the habitual substance offender statute, and

III. Whether the sentence imposed is contrary to law.

We affirm in part, reverse in part, and remand.

On November 13, 2001, Indiana State Police Trooper Kurt Jack was on patrol in his marked police car when he observed a pickup truck traveling at a high rate of speed. Trooper Jack tracked the vehicle with a radar unit and determined that the truck was traveling seventy-two miles per hour in a fifty-five mile per hour zone. Murray was later identified as the driver and the sole occupant of the truck. As Trooper Jack began to follow, Murray accelerated away from him. Trooper Jack caught up to the truck within two miles, at which time he activated the red lights on his vehicle. Murray rapidly decelerated and turned the truck into a corn field and thereafter led Trooper Jack and approximately ten to fifteen other law enforcement officers on a high-speed chase which spanned two Indiana counties and eventually ended in Ohio when Murray jumped out of the still rolling truck and started running through a wooded area. Murray crossed the St. James River on foot and was eventually apprehended when officers found him hiding beneath the roots of an uprooted tree.

After Murray was apprehended, the truck was impounded and Trooper Brian Walker conducted an inventory search. Strewn throughout the inside of the truck, Trooper Walker found five twenty-four-count boxes of Sine–Aid cold medicine, two twenty-four-count boxes of Roundy's Aphedrid cold medicine, one twenty-four-count box of Comtrex cold medication, two cans of starting fluid (i.e. ether), a box containing ten Mason jars, a four-pound box of salt, a cut segment of a garden hose, two lithium batteries,[7] a .22 caliber rifle, and miscellaneous grocery items.

The troopers also determined that Murray was an habitual traffic violator and that his license had been suspended for a ten-year period to end in September 2006. Further, during the course of the chase, Trooper Jack learned that the license plate number on the truck was registered to another vehicle. Indeed, a piece of sandpaper obscured the truck's VIN number, the steering column had been "punched," a red stripe had been painted over an existing silver stripe, and handrails had been added to the bed of the truck. As it turned out, the truck Murray was driving had been reported stolen by Murray's cousin.

On November 14, 2001, the State filed an information charging Murray with five counts stemming from the November 13 incident. On November 29, 2001, the State filed an additional information alleging Murray to be an habitual substance offender. The case proceeded to a jury

---

5. Ind.Code § 35–42–2–2 (Burns Code Ed. Supp.2003).

6. Ind.Code § 35–50–2–10 (Burns Code Ed. Supp.2003).

7. One of the lithium batteries was actually found on the ground outside of the truck at the approximate spot where Murray opened the truck door and fled on foot.

trial in Murray's absence on January 6 and 7, 2003. At the conclusion of the evidence, the jury found Murray guilty on all counts. At the conclusion of the second phase of the trial, the jury found that Murray was an habitual substance offender. The trial court sentenced Murray to ten years imprisonment for the underlying convictions, enhanced by eight years for the habitual substance offender determination.[8]

## I

### *Jury Instruction*

Murray first argues that the trial court committed reversible error in instructing the jury. At trial, the State tendered the following instruction, which the trial court gave as Final Instruction 19:

"The possession of a large amount of ephedrine and/or pseudoephedrine, along with other chemical reagents or precursors, is circumstantial evidence of intent to manufacture methamphetamine. If you find from the facts presented that the defendant was in possession of an amount of ephedrine and/or pseudoephedrine that is greater than that needed for his own personal use, along with other chemical reagents or precursors, you may infer that the defendant possessed the ephedrine and/or pseudoephedrine with the intent to manufacture methamphetamine." Appendix at 131.

Murray objected to the instruction specifically challenging the use of the word "large" in the first sentence and to that part of the second sentence which referred to an amount "that is greater than that needed for his own personal use." Murray requested that the instruction be stricken or, at the very least, be modified to exclude the "large" and "personal use" language. Murray based his objection upon the fact that the Legislature had removed the "personal use" exception from the definition of "manufacture" and that the instruction effectively put such back in.

In response, the State argued that the "personal use" language was not derived from the old definition of manufacture; rather it was directed toward the inference which could be drawn from the possession of a large quantity of an item—i.e., cold medication—which in and of itself is legal to possess. In overruling Murray's objection, the trial court explained:

"The reason for overruling the objection is two parts. One, the change in the statute, it appears to me that that made it easier to prove this matter and I think that the instruction as written actually makes it harder to prove because it followed an older language and I think that's in the benefit of the defendant and secondly, the logic of these cases, it seems to me is that you have household ingredients that can be compounded to make an illegal drug and so the proof of intent to do that would be a large quantity of certain ingredients and I think that given that, that instruction, as proposed makes better sense and echoes the law as I understand it." Transcript at 362.

▪. The purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Dill v. State,* 741 N.E.2d 1230, 1232 (Ind.2001). In reviewing a trial court's decision to give a tendered jury instruction, we consider (1) whether the instruction correctly states the law, (2) is

---

8. In imposing the sentence the trial court did not differentiate between or among the five convictions but lumped them together for purposes of a single ten-year sentence. This anomaly is discussed, *infra,* in Part III.

supported by the evidence in the record, and (3) is not covered in substance by other instructions. *See Whitney v. State,* 750 N.E.2d 342, 344 (Ind.2001). The trial court has discretion in instructing the jury, and we will reverse only when the instructions amount to an abuse of discretion. *Id.* To constitute an abuse of discretion, the instructions given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. *Id.* We will consider jury instructions as a whole and in reference to each other, not in isolation. *Id.*

■ Upon appeal, Murray asserts that the instruction was erroneous because the personal use exception had been removed from the definition of manufacture and thus, "the State [had] no legitimate need for an instruction highlighting the distinction between personal and commercial purposes." Appellant's Brief at 9. Essentially, Murray's claim is that the instruction, with the "personal use" language, was an incorrect statement of the law. Murray is correct in that effective July 1, 2001, the personal use language was deleted from the definition of "manufacture."[9] To the extent it can be said that the instruction resurrects the personal use exception, it is an incorrect statement of the law.

Be that as it may, considering the instructions as a whole we conclude that the instructions served their purpose in that they adequately informed the jury of the law applicable to the case. Indeed, in addition to the challenged instruction, the trial court gave an instruction setting forth the elements of the crime of possession of precursors with intent to manufacture methamphetamine. In that instruction, the jury was instructed that the State was required to prove beyond a reasonable doubt that Murray possessed pseudoephedrine, ether, and lithium batteries. The elements instruction, however, did not mandate that the jury find that Murray possessed an amount of pseudoephedrine "greater than that needed for his own personal use." Further, the jury was also instructed as to the definition of "manufacture" as that term is defined without the personal use exception. Thus, while the challenged instruction informs the jury that it may consider Murray's possession of precursors, including his possession of a "large" amount of pseudoephedrine or an amount "greater than that needed for his own personal use," to infer an intent to manufacture, other instructions adequately instructed the jury as to the material elements of the crime. We therefore conclude that the trial court did not abuse its discretion in instructing the jury because

9.  In *Hatcher v. State,* 762 N.E.2d 170 (Ind.Ct. App.2002), *trans. denied,* the majority concluded that the Legislature's amendment to the definition of manufacture, i.e. deletion of the exclusion for "the preparation or compounding of a controlled substance by an individual for his own use," was passed to more clearly express the original intent of the Legislature. The author of this opinion concurred in result, asserting that the clear language of the statute prior to the Legislature's amendment protected manufacturing activity done "for the [actor's] own use." Therefore, this author disagreed with the majority insofar as its conclusion that the amendment, deleting the personal use exception, was "an

expression of the intent of the legislature in drafting the statute in the first place." *Id.* at 174 (Sullivan, J., concurring in result). *See also Culbertson v. State,* 792 N.E.2d 573 (Ind. Ct.App.2003), *reh'g denied, trans. pending; Bradley v. State,* 765 N.E.2d 204 (Ind.Ct.App. 2002). Be that as it may, it remains that the definition of manufacture no longer excludes the preparation or compounding of a controlled substance by an individual for his own use. Thus, in the present case, the State was not required to prove that Murray intended to manufacture more than necessary for his personal use in order to obtain a conviction for possession of precursors with intent to manufacture.

the instructions taken as a whole did not misstate the law or otherwise mislead the jury.

▬▬ Murray also argues that the instruction is erroneous because the "personal use" language unnecessarily emphasized a particular evidentiary fact. However, Murray makes this argument for the first time upon appeal. It is well-settled that a defendant may not object to an instruction upon one ground at trial and present a different ground upon appeal. *See Morgan v. State,* 755 N.E.2d 1070, 1077 (Ind.2001). Murray has therefore waived any such error.

▬▬ Waiver notwithstanding, to the extent that the instruction was error, it was harmless. Errors in giving of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise. *Dill,* 741 N.E.2d at 1233. First, we note that to the extent the challenged instruction added the "personal use" exception, Murray was not harmed as such language would have served only to increase the State's burden. Indeed, as to the amount of pseudoephedrine, possession of any amount would qualify as possession of a precursor. Moreover, in order to obtain a conviction for possession of precursors, the State was required to prove that Murray possessed two or more precursors, specifically alleged as pseudoephedrine, ether, and lithium batteries, with intent to manufacture methamphetamine. At trial the State presented evidence that Murray possessed nine boxes of cold medication, two lithium batteries, and two containers of starting fluid. This evidence is clearly sufficient to sustain the conviction for possession of precursors.

▬▬ Murray also argues that the instruction was erroneous in that it invades the province of the jury as to the determinative factual issue of the case. Murray's argument in this regard is based upon the first sentence of the instruction, which provides, "The possession of a large amount of ephedrine and/or pseudoephedrine, along with other chemical reagents or precursors, *is* circumstantial evidence of intent to manufacture methamphetamine." Appendix at 131 (emphasis supplied). At trial, Murray did not object to this part of the instruction. As already noted, a defendant may not object to an instruction on one ground at trial and then raise a different ground upon appeal. *Morgan,* 755 N.E.2d at 1077. Murray has thus waived any argument regarding the first sentence of the instruction.[10]

## II

### *Habitual Substance Offender*

Murray argues that he could not be sentenced as an habitual substance offender because he had not committed a predicate substance offense. The State argues that Murray has waived appellate review of this claim because he did not move to dismiss the habitual substance offender information or object at trial. To avoid waiver, Murray argues that his sentence enhancement as an habitual substance offender exceeds statutory authority and thus constitutes fundamental error.

---

**10.** Waiver notwithstanding, Murray's argument fails. *See Whitney v. State,* 750 N.E.2d 342 (Ind.2001) (considering propriety of similar instruction in a prosecution for dealing in cocaine and holding that although the first sentence of the instruction with its mandatory "is" language was "highly problematic," the second sentence in the instruction "sufficiently recognized the authority of the jury to make its own determination" such that the trial court did not err in giving the instruction); *Williams v. State,* 658 N.E.2d 598 (Ind. Ct.App.1995).

To address Murray's argument, we must interpret the habitual substance offender statute. The primary rule in statutory construction is to ascertain and give effect to the intent of the legislature. *Brown v. State,* 790 N.E.2d 1061, 1063 (Ind.Ct.App.2003). The best evidence of legislative intent is the language of the statute, giving all words their plain and ordinary meaning unless otherwise indicated by statute. *Id.* at 1063–64. We will presume that the legislature intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result. *Id.* at 1064. We must also strictly construe penal statutes against the State to avoid enlarging them beyond the fair meaning of the language used. *Hatcher v. State,* 762 N.E.2d 170, 172–73 (Ind.Ct.App.2002), *trans. denied.*

Indiana Code § 35–50–2–10(b) provides that, "The state may seek to have a person sentenced as a habitual substance offender for any substance offense by alleging ... that the person has accumulated two (2) prior unrelated substance offense convictions." As defined by the habitual substance offender statute, a "substance offense" is "a Class A misdemeanor or a felony in which the possession, use, abuse, delivery, transportation, or manufacture of alcohol or drugs is a material element of the crime." I.C. § 35–50–2–10(a)(2).

Murray argues that possession of precursors does not constitute possession of "drugs" as required to be a substance offense. "Drug" is defined by the habitual substance offender statute as "a drug or a controlled substance (as defined in IC 35–48–1)." I.C. § 35–50–2–10(a)(1). In turn, a "controlled substance" is defined as "a drug, substance, or *immediate precursor* in schedule I, II, III, IV, or V...." Ind.

Code § 35–48–1–9 (Burns Code Ed. Repl. 1998) (emphasis supplied). The State argues that the term "immediate precursor" in the definition of "controlled substance" includes the precursors listed in I.C. § 35–48–4–14.5, the statute defining the crime of possession of precursors with intent to manufacture. Thus, the State argues that Murray's possession of precursors as listed in I.C. § 35–48–4–14.5 constitutes possession of a "controlled substance" which is possession of a "drug" as required to constitute a substance offense.

We read the statute more narrowly than the State. The term "controlled substance" is defined as "a drug, substance, or immediate precursor *in schedule I, II, III, IV, or V.* ..." I.C. § 35–48–1–9 (emphasis supplied). As defined, the term does not include precursors listed in I.C. § 35–48–4–14.5, but rather, only those drugs, substances, or immediate precursors identified in the statutes defining the schedules of controlled substances. Therefore, under a strict reading of the statute, the precursors listed in I.C. § 35–48–4–14.5(a) are not "controlled substances" and thus, not "drugs" as required to establish a predicate substance offense, unless they are included in Schedule I, II, III, IV, or V. None of the precursors which Murray possessed—pseudoephedrine, ether, or lithium metal—are included in any schedule of controlled substance.[11]

The State also argues that, as the intent to *manufacture* a drug is a material element, the crime of possession of precursors constitutes a substance offense. The State, however, emphasizes the wrong part of the statute defining the crime. Indeed, it is the *intent* to manufacture, not the manufacture itself, which makes the pos-

---

**11.** Indeed, none of the precursors listed in I.C. § 35–48–4–14.5 are included in Schedule I, II, III, IV, or V.

session of two or more precursors a crime. We have recently noted that the sole distinguishing factor between a dealing conviction for manufacturing methamphetamine under Ind.Code § 35–48–4–2 (Burns Code Ed. Supp.2003) and a conviction for possession of precursors with intent to manufacture methamphetamine is that "one may be guilty of possessing chemical precursors with intent to manufacture without actually beginning the manufacturing process, whereas the manufacturing process must, at the very least, have been started by a defendant in order to be found guilty of manufacturing methamphetamine." *Iddings v. State*, 772 N.E.2d 1006, 1016–17 (Ind.Ct.App.2002), *trans. denied*. This leads us to conclude that the "manufacture of . . . drugs" is not a material element of the crime of possession of precursors with intent to manufacture, and thus, cannot support a determination that possession of precursors with intent to manufacture is a substance offense.

■■■■■ Because the crime of possession of precursors with the intent to manufacture methamphetamine is not a predicate "substance offense" for purposes of enhancing a sentence under the habitual substance offender statute, the court had no authority to enhance Murray's sentence. "A sentence that is contrary to or violative of a penalty mandated by statute is illegal in the sense that it is without statutory authorization." *Rhodes v. State*,

698 N.E.2d 304, 307 (Ind.1998). A sentence that exceeds statutory authority constitutes fundamental error. *Id.* Therefore, Murray's habitual substance offender determination and the sentence thereon constitute fundamental error and must be vacated.

## III

### *Sentencing*

■■■■ Finally, Murray challenges the sentence imposed by the trial court. In sentencing Murray, the trial court adequately articulated five aggravating factors and four mitigating factors and found that the aggravators outweighed the mitigators.[12] The trial court also accepted the State's assertion that the convictions arose out of "an episode of criminal conduct."[13] In its oral sentencing statement and in its sentencing order, the trial court sentenced Murray to ten years imprisonment upon the underlying offenses, enhanced by eight years for the habitual substance offender determination. (Tr–504, App–314) The court did not, however, impose a specific sentence as to each conviction. The abstract of judgment nevertheless provides that the sentence imposed was ten years for Class C felony possession of precursors, eight years for Class D felony operating a vehicle as an habitual traffic offender, ten years for Class D felony receiving stolen property, ten years for Class D felony resisting law enforcement, and ten

---

**12.** Murray does not challenge the aggravating and mitigating factors found by the trial court or the court's balancing of those factors.

**13.** An "episode of criminal conduct" is defined as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." Ind.Code § 35–50–1–2(b) (Burns Code Ed. Supp.2003). Where a defendant is sentenced for felony convictions arising out of an episode of criminal conduct, the trial court shall not impose a sentence which exceeds the presumptive sentence for a

felony which is one class of felony higher than the most serious of the felonies for which the person has been convicted. I.C. § 35–50–1–2(c). Here, the highest class of felony for which Murray was convicted was a Class C felony. Thus, the maximum aggregate sentence which the trial court could have imposed upon Murray for the underlying *felony* offenses was ten years, the presumptive sentence for a Class B felony. *See* Ind.Code § 35–50–2–5 (Burns Code Ed. Repl.1998).

years for Class A misdemeanor criminal recklessness. The individual sentences, as listed in the abstract of judgment, clearly exceed the maximum sentence allowed for each Class of offenses. Indeed, the maximum sentence for a Class C felony is eight years,[14] the maximum sentence for a Class D felony is three years,[15] and the maximum sentence for a Class A misdemeanor is one year.[16] While the aggregate sentence is in accordance with I.C. § 35–50–1–2, the record does not reflect what sentence the trial court imposed upon each individual conviction. We therefore vacate the sentence imposed upon the underlying offenses and remand for clarification as to the sentences reflected in the abstract of judgment.

The judgment of the trial court is affirmed in part, reversed in part, and remanded for proceedings not inconsistent with this opinion.

FRIEDLANDER, J., and RILEY, J., concur.

**L.W., Appellant–Defendant,**

**v.**

---

**14.** Ind.Code § 35–50–2–6 (Burns Code Ed. Repl.1998).

**15.** Ind.Code § 35–50–2–7 (Burns Code Ed. Supp.2003).

**16.** Ind.Code § 35–50–3–2 (Burns Code Ed. Repl.1998).