**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MICHAEL FRISCHKORN**
Frischkorn Law LLC
Fortville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jan 16 2013, 9:09 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| CHRISTOPHER HUDSON, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 48A04-1207-CR-355 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Rudolph R. Pyle, III, Judge
Cause No. 48C01-1006-FC-208

**January 16, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Christopher Hudson ("Hudson") appeals his conviction after a jury trial for Possession of a Dangerous Material or Device by a Prisoner, as a Class C felony.[1]

We affirm.

**Issues**

Hudson raises two issues for our review:

    I.    Whether the trial court issued an erroneous jury instruction; and

    II.    Whether the trial court's decision to sentence Hudson in absentia violated Hudson's right to be present during the penalty phase of his trial.

**Facts and Procedural History**

On March 15, 2010, Hudson was an inmate serving a prison sentence at the Pendleton Correctional Facility. That evening, Correctional Officer Blaine Hurt ("Officer Hurt") was running the "med line," which was used to ensure medications were administered to inmates at the facility. (Tr. at 37.) Hudson was among the inmates who were permitted out of their cells as part of the med line procedure. Hudson did not line up with the other inmates; Officer Hurt instead found Hudson talking to another prisoner in a cell some distance from the med line.

Officer Hurt thrice called Hudson over and asked what he was doing out of the line, but Hudson did not comply. Officer Hurt then walked over to Hudson and asked what he was doing. Hudson replied that he was talking to a friend. Officer Hurt then told Hudson to

---

[1] Ind. Code § 35-44-3-9.5 (recodified to I.C. § 35-44.1-3-7, effective Jul. 1, 2012).

turn around so that a pat-down could be conducted, and Hudson complied with the instruction.

Upon performing the pat-down, Officer Hurt felt a hard object in the front-left pocket of Hudson's gym shorts, which Hudson wore underneath his prison clothes. After placing Hudson in restraints, Officer Hurt retrieved the hard object from Hudson's gym shorts. The object was a padlock attached to a strip of bed sheet that measured around three feet in length. Recognizing this as an item used by prisoners only as a weapon, Officer Hurt seized the lock. Hudson was then placed into a cell in a different part of the prison.

On May 27, 2010, the State charged Hudson with Possession of a Dangerous Material or Device by a Prisoner, as a Class C felony.

A jury trial was conducted on January 24 and 25, 2012. Before the trial, the trial court tendered proposed preliminary jury instructions to the parties; among these was an instruction that set forth elements for the charged offense. The trial court used the language of Indiana Pattern Jury Instruction 5.43 in the instruction; while the instruction used the language of the statute for the charged offense, it also used some language that differed from the statutory language. Hudson objected to the use of this changed language, specifically requesting that the trial court strike the word "ordinarily" from certain portions of the instruction, but the trial court overruled the objection. The challenged language was used in both the preliminary and final instructions to the jury.

At the trial's conclusion on January 25, 2012, the jury found Hudson guilty as charged. On February 17, 2012, Hudson filed a motion requesting that his sentencing

hearing be conducted through video connection from prison rather than in-person; the trial court granted this motion.

On June 28, 2012, the trial court conducted a sentencing hearing. Hudson was present at the prison, but refused to timely attend the hearing. The trial court therefore conducted the hearing in Hudson's absence, though Hudson's trial counsel was present at the hearing. At the hearing's conclusion, the trial court entered judgment of conviction against him, and sentenced him to seven years imprisonment to be served consecutive to his sentences in a prior case.

This appeal ensued.

## Discussion and Decision

### Jury Instruction

Hudson challenges his conviction and contends that a jury instruction issued by the trial court, which was included in both the preliminary and final instructions, was both incorrect as a statement of the law and unsupported by the evidence presented during the trial. Our standard of review in such cases is well settled:

> The purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. In reviewing a trial court's decision to give a tendered jury instruction, we consider (1) whether the instruction correctly states the law, (2) is supported by the evidence in the record, and (3) is not covered in substance by other instructions. The trial court has discretion in instructing the jury, and we will reverse only when the instructions amount to an abuse of discretion. To constitute an abuse of discretion, the instructions given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. We will consider jury instructions as a whole and in reference to each other, not in isolation.

4

Munford v. State, 923 N.E.2d 11, 14 (Ind. Ct. App. 2010) (quoting Murray v. State, 798 N.E.2d 895, 899-900 (Ind. Ct. App. 2003) (citations omitted)). Where an instruction is erroneous, "we presume the error affected the verdict, and we will reverse the defendant's conviction 'unless the verdict would have been the same under a proper instruction.'" Kane v. State, 976 N.E.2d 1228, 1232 (Ind. 2012) (quoting LaPorte Cmty. Sch. Corp. v. Rosales, 963 N.E.2d 520, 525 (Ind. 2012)).

The instruction, which Hudson challenged at trial and now challenges on appeal, provided in relevant part:

> The crime of possession of dangerous material by an incarcerated person is defined by statute as follows:
>
> A person who knowingly or intentionally while incarcerated in a penal facility possesses a device, equipment, a chemical substance, or other material that is used or is intended to be used in a manner that is readily capable of causing bodily injury commits a class C felony.
>
> Before you convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:
>
> 1. The Defendant
>
> 2. Knowingly or intentionally
>
> 3. While incarcerated in a penal facility
>
> 4. Possessed a device or material fashioned from a metal lock
>
> 5. When the device or material was ordinarily used or ordinarily intended to be used in a manner readily capable of causing bodily injury.

(App. at 24, 44.) Hudson contends that this instruction—in particular, the use of the phrase "ordinarily used or ordinarily intended to be used"—misstates the law when compared to the statutory language that provides only that an item "is used or is intended to be used."

5

Our courts have not yet determined whether the instruction the trial court issued, which originates from Indiana Pattern Jury Instruction 5.43, is erroneous as a statement of the law. The trial court observed that the language of the statute that defines the charged offense here, Possession of Dangerous Material by an Incarcerated Person, closely tracks the language used by the Indiana Code to define the term deadly weapon. The statutory definition of deadly weapon provides, "'deadly weapon' means … (2) [a] destructive device, weapon, device, taser … or electronic stun weapon, equipment, chemical substance, or other material that in the manner it: (A) is used; (B) could ordinarily be used; or (C) is intended to be used; is readily capable of causing serious bodily injury." I.C. 35-31.5-2-86(a) (effective Jul. 1, 2012, replacing then-effective I.C. § 35-41-1-8) (emphasis added). Based upon this similarity, the trial court declined Hudson's requests that it strike the word "ordinarily" from the jury instructions.

Inclusion of the word "ordinarily" in the instruction was an incorrect statement of law, and thus the instruction was issued in error. Had the legislature intended for the State to prove that an item meets the "ordinarily" requirement in order to convict an individual of Possession of a Dangerous Material or Device by a Prisoner, as was intended with the deadly weapon statute, the legislature clearly could have done so. See Brown v. State, 790 N.E.2d 1061, 1064 (Ind. Ct. App. 2003) (concluding that if the legislature had intended the State be required to prove a gun was loaded to obtain a conviction for pointing a firearm, it "could easily have done so by inserting the word 'loaded' into [the] statutory provision"). This is evident given how closely the language of the Possession of a Dangerous Material or Device

6

by a Prisoner statute tracks the language of the statutory definition of deadly weapon—to the exclusion of the words "ordinarily" as in the deadly weapon statute. We thus cannot conclude that the instruction was a correct statement of the law.

But neither can we conclude that the trial court's giving of the instruction amounts to reversible error. The non-erroneous portion of the instruction the trial court issued to the jury covers the substance of the statutory definition of the charged offense, since the instruction as given first directly quotes the statutory language before setting out the portion under dispute. And, if anything, the inclusion of "ordinarily" in the instruction favored Hudson over the State.

Moreover, the evidence adduced at trial properly supports issuing the non-erroneous portion of the instruction. Multiple corrections officers testified that the device Officer Hurt seized from Hudson—a padlock attached to around three feet of string or bed sheet—had no purpose or use in their experience as corrections officers except to serve as a weapon, and that its use as a weapon could result in injuries including lacerations, bruises, and orbital fractures. Each of the officers denied that the device had any other use, including that of a "cadillac," which prisoners often use to transport items of personal property between prison cells. (Tr. at 78-79.)

While we conclude that the instruction as given was erroneous, we conclude that error was harmless. Hudson advances no other argument in favor of setting aside his conviction, and we accordingly affirm his conviction.

7

Hudson also challenges the conduct of the sentencing proceedings, which took place with Hudson in absentia.

He asserts this was error, and directs our attention to Indiana Code section 35-38-1-4. The statute provides, "[t]he defendant must be personally present at the time sentence is pronounced. If the defendant is not personally present when sentence is to be pronounced, the court may issue a warrant for his arrest." I.C. § 35-38-1-4(a). A defendant's right to be present at sentencing arises under Indiana common law and statutory enactment, and is separate from the constitutional or statutory right to be present at trial. Cleff v. State, 565 N.E.2d 1089, 1090-91 (Ind. Ct. App. 1991), trans. denied. "Our supreme court has held that despite statutory and constitutional provisions which seemingly require the defendant's presence during criminal proceedings, those provisions may be waived 'insofar as they are in favor of the accused.'" Crank v. State, 502 N.E.2d 1355, 1358 (Ind. Ct. App. 1987) (quoting Bullock v. State, 451 N.E.2d 646, 647 (Ind. 1983)), trans. denied. Where the record shows that a defendant was aware of the date and time of his trial or sentencing, this court and our supreme court have found no error in the sentencing of a defendant in absentia. Gillespie v. State, 634 N.E.2d 862, 864 (Ind. Ct. App. 1994) (concluding that where the defendant "was aware of the date and time of his trial" and failed to appear, the defendant had waived his right to be present at sentencing), trans. denied.

Here, Hudson acknowledges he was aware of the date of the sentencing hearing. Rather, he argues that the trial court's decision to proceed with sentencing after a delay of

eleven minutes from the scheduled start of the hearing deprived him of his right under Indiana law to be present for his sentencing when he "was simply late." (Appellant's App. at 10.) Hudson insists that his case is different from prior Indiana cases because he was present at the prison where the video hearing would be held, and because he was not absent from the jurisdiction and was present at trial. He argues that "[t]here is no evidence that Hudson did not intend to attend the hearing or that he would have continued his 'slow' approach to the hearing had he been advised that the sentencing would continue without his presence." (Appellant's Br. at 10.)

We do not agree. First, unlike other situations in which individuals are "simply late" in arriving for hearings before trial courts, the evidence does not reflect that Hudson was running behind schedule because of such things as traffic or a mechanical problem with a vehicle. Rather, Sergeant Stanley Cooperrider ("Sergeant Cooperrider"), a correctional officer, testified that though Hudson had been notified of the date and time of the hearing, he was "not really in an enthusiastic mood about coming up here receiving sentence," was "passively resistant" to coming to the hearing, and "[y]ou will wait for him, Your Honor, is his attitude." (Tr. at 196-197.)

Thus, though Hudson was informed at 2 p.m. to prepare to attend a 2:30 p.m. hearing, he refused to comply with instructions from prison staff and, after a delay, the trial court obtained an explanation from Sergeant Cooperrider for the delay, proceeded with the sentencing hearing in Hudson's absence, and obtained testimony from Sergeant Cooperrider concerning Hudson's conduct. Under the circumstances, we cannot conclude that the trial

9

court erred when it conducted the sentencing hearing without Hudson's presence. We therefore affirm his sentence.

## Conclusion

It was error, but harmless error, for the trial court to issue a jury instruction using the term "ordinarily" in conjunction with the offense of Possession of a Dangerous Material or Device by a Prisoner. The trial court did not err in sentencing Hudson <u>in absentia</u>.

Affirmed.

VAIDIK, J., and BROWN, J., concur.