**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**PATRICIA CARESS McMATH**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PAUL REESE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1207-CR-381 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert Altice, Judge
Cause No. 49G02-1102-MR-10926

**May 22, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Paul Reese (Reese), appeals his conviction for murder, a felony, Indiana Code § 35-42-1-1, as well as the sentence imposed thereon.

We affirm.

## ISSUES

Reese raises two issues on appeal, which we restate as follows:

1.      Whether the trial court erred when it instructed the jury on accomplice liability; and

2.      Whether the trial court erred in sentencing Reese.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the verdict reveal that in March 1986, Reese lived at 1428 N. Bosart Avenue with his wife Barbara (Barbara), his six children; sixteen-year-old Paul, Jr. (Paul, Jr.), fifteen-year-old Johnny, fourteen-year-old Brian, thirteen-year-old Jeremy, twelve-year-old Jenny, five-year-old Cindy, and Paul, Jr.'s girlfriend, seventeen-year-old Pamela Winningham (Winningham). Thirteen-year-old D.S. lived a block away on Drexel Avenue. D.S. was friends with Reese's children and often helped Reese's wife deliver newspapers. D.S.'s parents worked in Dayton, Ohio and returned to Indianapolis on the weekends to see their daughter. While her parents were in Dayton during the week, D.S. stayed with her aunt, who lived a few blocks north on Drexel Avenue.

2

On Sunday, March 16, 1986, D.S.'s parents left early for Dayton. D.S. was supposed to walk to her aunt's house when she woke up. Instead, D.S. walked over to the Reeses' home about 9:30 that morning. Reese, Barbara, Paul, Jr., Winningham, and Reese's daughters were all at the house. The Reeses had a pool table in the basement, and D.S. asked Reese if he would play a game with her. Reese responded that he would play with her later in the morning. D.S. then asked Winningham if she wanted to play a game, but Winningham and Paul, Jr., were on their way to a local flea market with Paul, Jr.'s friend, seventeen-year-old Tim Kelly (Kelly). When Paul, Jr. and Kelly returned to the house between 10:30 and 11:00 a.m. because they had forgotten something, D.S. opened the door for them. She was holding a pool cue in her hand. Kelly and Paul, Jr. left the house again about noon.

Between noon and 2:00 that afternoon, sixteen-year-old Doyle Stinson knocked on the Reeses' door. D.S. opened the door, but it was quickly slammed shut by someone standing behind her. Doyle did not knock again and left. Winningham returned home about 4:30 p.m. Reese looked as if he had just taken a shower and Winningham did not see D.S. She assumed Barbara and her daughters were home because she could hear a television playing. Reese told Winningham not to go down to the basement where she shared a room with Paul, Jr.

About 3:00 that afternoon, D.S.'s aunt contacted D.S.'s parents in Dayton to let them know that D.S. was missing. D.S.'s parents immediately returned to Indianapolis to help search for their daughter. The first place D.S.'s father went to look for his daughter

was the Reeses' home. Barbara opened the door and denied that D.S. had been at their home that day. When her young daughter spoke up and said, "yes, mom, she was --," Barbara smacked her across the face to silence her. (Tr. p. 76).

The testimony further showed that that evening, Paul, Jr. borrowed Kelly's car. When Paul, Jr., returned the car, his hair was messed up and his face was flushed. The car had mud on it, the back seat was down, and the speakers had been moved. There were also items in the car that had not been there when Kelly loaned the car to Paul, Jr. including one half of a pool cue, some wadded up tape, newspapers, and some black spray paint. Later that evening, Reese asked Kelly for a ride to look at some old tires. During the drive, Reese directed Kelly to drive by a ravine near 22nd Street and Drexel Avenue as well as a baseball park at 19th Street and Forest Manor Avenue.

Paul, Jr., and Winningham went to sleep in the basement about 11:30 that night. About an hour later, Winningham woke up when she heard someone in the basement making a clattering noise. She asked who was there and Barbara responded that she was doing laundry. However, Winningham did not hear either the washer or the dryer running. She did hear Reese's voice.

Between 1:00 and 1:30 a.m., the Reese's neighbor Carol Luken was up with her dog's newborn puppies when she heard loud talking and the sound of banging doors coming from the Reeses' house. She observed Reese and Paul, Jr. pushing one of the family's cars into the street. Reese then backed the family station wagon to the back door of the house, and he and his son carried a six to seven-foot long rolled up rug out of the

4

house and loaded it into the back of the station wagon.  The rug sagged in the middle as the two men carried it.  Barbara drove the car away with its headlights off.  Reese was in the car with her.

The following day, a woman walking her daughter to school noticed D.S.'s body in a ravine in the vicinity of 22nd Street and Drexel Avenue near where Kelly had driven Reese the preceding day to look for tires.  Dogs had been heard barking in the area at 1:30 a.m. that morning.  Police believed that D.S.'s body had been dropped down the ravine, but that she had been killed somewhere else.  D.S. had a bruise on the bridge of her nose and multiple small abrasions on her forehead and cheek.  There was residue from adhesive tape over her mouth and wrist.  She also had an injury to the back of her head consistent with a violent blunt impact to a chimney flue, and her body showed evidence that she had been strangled.  Yellow and green carpet fibers were found on her clothing, on her body, and inside her mouth.  In addition, D.S. had suffered forced sexual injuries to both her vagina and her anus prior to her death.

During the investigation into D.S.'s death, the police recovered a red substance from a brick furnace flue in Reese's basement.  A laboratory analysis revealed that the substance was type O human blood, which was D.S.'s blood type.  D.S.'s injury was consistent with her head impacting the furnace flue.  In addition, the yellow and green carpet fibers found on and around D.S. could have had a common origin with a six-foot long piece of carpet found at 19th Street and Forest Manor Avenue where Reese had

5

directed Kelly to drive him the preceding day. All of these fibers could have also had a common origin with carpet pieces found in the Reeses' basement.

The police questioned Reese in March and April 1986. Reese stated that D.S. was at his house the morning of March 16 and that they played some pool. Later, Reese became tired of playing pool with D.S. and went upstairs for some coffee. Although he did not see D.S. leave, he was positive that D.S. had left the house by noon. At the time, Reese and Barbara were both "on . . . the [police's] radar" as suspects in D.S.'s death. (Tr. p. 772).

However, the case went cold until 2008 when it was re-examined using new DNA technology. Final result of the tests received in 2011 revealed that the red substance on the brick furnace flue in Reese's basement contained D.S.'s DNA. Also in January 2011, policed received a letter from inmate DeAngelo Gaines, who had been incarcerated with Reese both in the Marion County Jail and the Pendleton Correctional Facility on other charges. In the letter, Gaines explained that Reese had told Gaines that Reese deserved to be punished because he had previously taken the life of someone in his neighborhood a quarter of a century ago. Later, Reese told Gaines that he could not be convicted of the prior murder of a young girl who had been a friend of his son's because of the statute of limitations. Reese explained that he had killed the girl because she had "stayed too late" and that he dumped her body near 21st Street. (Tr. p. 807).

On February 17, 2011, the State filed an Information charging sixty-nine-year-old Reese with murder, a felony. At trial, which began on June 18, 2012, Dr. Dean Hawley

6

testified that a pool cue could have caused D.S.'s strangulation injuries as well as the injury to the bridge of her nose. Dr. Hawley further testified that in his opinion, D.S. died as a result of asphyxia due to strangulation and blunt force injuries to her hands, face, and neck.

Also during trial, the State tendered the follow instruction on accomplice liability:

A person who knowingly aids another person to commit an offense commits that offense even if the other person:

1. has not been prosecuted for the offense;
2. has not been convicted of the offense; or
3. has been acquitted of the offense.

(Appellant's App. p. 114). Reese specifically stated that he was "fine with" this instruction (Tr. p. 1046), and did not object to it. A jury convicted Reese as charged on June 22, 2012.

On July 18, 2012, the trial court conducted a sentencing hearing. Evidence introduced at the hearing revealed that Reese has an extensive history of serious felony convictions, which include: 1) voluntary manslaughter in 1979 for beating the victim to death with a claw hammer; 2) burglary as a class B felony in 1989 for breaking and entering a residence with intent to commit theft; 3) burglary as a class B felony in 1995 for breaking and entering a residence with intent to commit theft; and 4) two counts of robbery as class B felonies in 1997. Further, in 2008, Reese was charged with murder and burglary as a class A felony. He pled guilty to burglary.

The trial court found Reese's age and mental health to be mitigating circumstances. The trial court further found Reese's extensive criminal history to be an aggravating factor. In addition, the trial court explained as follows:

> The [c]ourt likewise believes that the nature and the circumstances of this crime were very aggravating. A 13 year-old young girl sexually assaulted, strangled with a pool cue, wrapped in a carpet, and then dumped in a ravine for a neighborhood lady walking her young child to school to find; laying down in a ravine. . . . [T]he [c]ourt believes that the appropriate sentence in this case for what this [c]ourt in the last 12 years has seen as one of the worst of the worst is 60 years in the Department of Corrections.

(Tr. p. 1133).

Reese now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

### I. *Jury Instructions*

Reese first argues that the trial court erred in instructing the jury on accomplice liability. He has waived appellate review of this issue because he failed to object to the instruction at trial. *See Gamble v. State,* 831 N.E.2d 178, 185 (Ind. Ct. App. 2005), *trans. denied.* Reese attempts to avoid waiver by claiming that the trial court's instruction constituted fundamental error. The fundamental error exception to the waiver rule is an extremely narrow one. *Munford v. State*, 923 N.E.2d 11, 13 (Ind. Ct. App. 2010). To rise to the level of fundamental error, the error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id.* Specifically, the error must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process. *Id.* at 13-14.

8

When we consider a claim of fundamental error with respect to jury instructions, we look to the jury instructions as a whole to determine if they were adequate. *Id.* at 14.

The purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Murray v. State*, 798 N.E. 2d 895, 899 (Ind. Ct. App. 2003). In reviewing the trial court's decision to give a tendered jury instruction, we consider whether (1) the instruction correctly states the law, (2) it is supported by the evidence in the record, and (3) it is not covered in substance by other instructions. *Id.* at 899-900. The trial court has discretion in instructing the jury, and we will reverse only when the instructions amount to an abuse of discretion. *Id.* at 900. To constitute an abuse of discretion, the instructions given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. *Id.* We will consider jury instructions as a whole and in reference to each other, not in isolation. *Id.*

Reese claims that fundamental error occurred in this case when the jury was instructed on accomplice liability because there was no evidence in the record to support an accomplice liability instruction. The accomplice liability instruction statute provides in relevant part that a "person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person . . . has not been prosecuted for the offense . . . ." Ind. Code § 35-41-2-4. In Indiana, there is no distinction between the responsibility of the principal and an accomplice. *Wise v. State*, 719 N.E.2d 1192, 1198 (Ind. 1999). Thus, one may be charged as a principal yet

convicted on proof that he or she aided another in the commission of the crime. *Id.* If there is some evidence that a second party was involved in the crime, an instruction on accomplice liability is proper. *Id.*

Here, contrary to Reese's claim on appeal, there was some evidence that more than one person may have been involved in the crime. For example, our review of the evidence reveals that Barbara was at home the entire time that D.S. was at the Reeses' house on March 16, 1986. She lied to D.S.'s father about D.S. being at the Reeses' house that day and smacked her young daughter to silence her when the daughter spoke up to tell D.S.'s father that D.S. had been at the Reeses' house. Winningham heard Barbara and Reese making a clattering noise in the basement late that night, and the Reeses' neighbor saw Barbara and Reese drive away with the car's lights off after Reese and his son loaded the car with a rolled carpet that sagged in the middle. Barbara and Reese were both "on the [police's] radar" as suspects in D.S.'s murder. This is sufficient evidence of Barbara's possible involvement in the crime to warrant an instruction on accomplice liability in this case. *See id.*

## II. *Sentence*

Reese also argues that the trial court erred in sentencing him. At the outset, we note that the murder in this case occurred in 1986. It is well settled that the sentencing statute in effect at the time the crime is committed governs the sentence for the crime. *Gutermuth v. State,* 868 N.E.2d 427, 432, n. 4 (Ind. 2007). At the time of the murder in this case, the presumptive sentence was 40 years, with no more than 20 years added for

aggravating circumstances and no more than ten years subtracted for mitigating circumstances. I. C. § 35-50-3-2 (1985). Here, the trial court ordered Reese to serve the maximum 60-year sentence for murder.

We further note that because the crime in this case occurred before the 2005 amendments to the sentencing statutes were adopted, we review the sentences under the presumptive sentencing scheme. *See Gutermuth,* 868 N.E.2d at 432, n.4. Under the presumptive sentencing scheme, sentencing determinations are within the trial court's discretion, and we will reverse only for an abuse of discretion. *Padgett v. State,* 875 N.E.2d 310, 315 (Ind. Ct. App. 2007), *trans. denied.* It is within the trial court's discretion to determine whether a presumptive sentence will be enhanced due to aggravating factors. *Id.* When the trial court does enhance a sentence, it must: 1) identify significant aggravating and mitigating circumstances; 2) state the specific reasons why each circumstance is aggravating or mitigating; and 3) evaluate and balance the mitigating against the aggravating circumstances to determine if the mitigating offset the aggravating factors. *Id.* It is generally inappropriate for us to substitute our judgment or opinions for those of the trial court. *Id.*

Lastly, we note that a review of a sentence under the presumptive sentencing scheme implicates *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In *Blakely*, the United States Supreme Court held that the Sixth Amendment requires a jury to determine beyond a reasonable doubt the existence of aggravating

factors used to increase a sentence above the presumptive sentence assigned by the legislature. *Rodriguez v. State,* 868 N.E.2d 551, 556 (Ind. Ct. App. 2007).

Reese specifically argues that his sentence violates *Blakely* because the trial court imposed an enhanced sentence based on aggravating factors not found by a jury. However, under *Blakely*, prior convictions maybe used to enhance a defendant's sentence without a finding of additional facts by a jury. *Williams v. State*, 830 N.E.2d 107, 113 (Ind. Ct. App. 2005), *trans. denied.* Further, a single aggravating circumstance can justify the imposition of an enhanced sentence. *Muncy v. State*, 834 N.E.2d 215, 218 (Ind. Ct. App. 2005).

Here, Reese has a prior conviction for voluntary manslaughter for beating the victim to death with a claw hammer. He also has one prior conviction for class A felony burglary, two prior convictions for class B felony burglary, and two prior convictions for class B felony robbery. We conclude that this extensive criminal history supports the trial court's imposition of an enhanced sentence. The trial court did not err in sentencing Reese.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not err in instructing the jury or in sentencing Reese.

Affirmed.

BRADFORD, J. and BROWN, J. concur